## BEATRICE DUNI *v.* UNITED TECHNOLOGIES CORPORATION/PRATT AND WHITNEY AIRCRAFT DIVISION ET AL.
## (15373)

Peters, C. J., and Callahan, Borden, Katz and Palmer, Js.

Argued May 30—officially released August 20, 1996

*Sydney T. Schulman,* for the appellant (plaintiff).

*Nancy S. Rosenbaum,* for the appellees (named defendant et al.).

*Kenneth H. Kennedy, Jr.,* assistant attorney general, with whom, on the brief, were *Richard Blumenthal,* attorney general, and *William J. McCullough* and *Michael J. Belzer,* assistant attorneys general, for the appellee (defendant second injury fund).

PALMER, J. The dispositive issue raised by this appeal is whether a stipulation entered into by an employee and his employer in full and final settlement of the employee's workers' compensation claim can bar a claim for survivor's benefits by the employee's widow after the death of the employee. The employee, William Duni (decedent), filed a workers' compensation claim against his former employer, United Technologies Corporation/Pratt and Whitney Aircraft Division (Pratt & Whitney), the named defendant. The decedent, Pratt & Whitney, the defendant Liberty Mutual Insurance Company (Liberty)[1] and the defendant Second Injury and Compensation Assurance Fund (fund)[2] entered into a stipulated settlement agreement that purported to bind the decedent and anyone else who might ever have a claim against the defendants on account of the decedent's work-related injuries. After the decedent's death, his widow, the plaintiff, Beatrice Duni, filed a claim for survivor's benefits under General Statutes § 31-306.[3]

---

[1] Liberty was Pratt & Whitney's insurance carrier.

[2] Subsequent to entering the stipulated settlement agreement at issue in this appeal, the fund was renamed the Second Injury Fund. Public Acts 1991, No. 91-32, §§ 38, 41, effective July 1, 1991.

[3] General Statutes § 31-306 provides in relevant part: "Death resulting from accident or occupational disease. Dependents. Compensation. (a) Compensation shall be paid to dependents on account of death resulting from an accident arising out of and in the course of employment or from an occupational disease as follows . . . .

"(2) To those wholly dependent upon the deceased employee at the date of his injury, a weekly compensation equal to seventy-five per cent of the

Pratt & Whitney and Liberty sought dismissal of the claim on the ground that it was barred by the settlement agreement. The workers' compensation commissioner (commissioner) denied the motion to dismiss. On appeal, the workers' compensation review board (review board) reversed the decision of the commissioner, concluding that the settlement agreement was binding on the plaintiff. The plaintiff appealed from the decision of the review board to the Appellate Court, and we transferred the appeal to this court pursuant to Practice Book § 4023 and General Statutes § 51-199 (c). We affirm the decision of the review board.

The facts relevant to this appeal are undisputed. The decedent was employed by Pratt & Whitney from 1941

average weekly earnings of the deceased calculated pursuant to section 31-310, after such earnings have been reduced by any deduction for federal taxes or state taxes, or both, and for the federal Insurance Contributions Act made from such employee's total wages received during the period of calculation of the employee's average weekly wage pursuant to said section 31-310, as of the date of the injury but not more than the maximum weekly compensation rate set forth in section 31-309 for the year in which the injury occurred or less than twenty dollars weekly. (A) The weekly compensation rate of each dependent entitled to receive compensation under this section as a result of death arising from a compensable injury occurring on or after October 1, 1977, and before July 1, 1993, shall be adjusted annually as provided in this subdivision as of the following October first, and each subsequent October first, to provide the dependent with a cost-of-living adjustment in his weekly compensation rate as determined as of the date of the injury under section 31-309. If the maximum weekly compensation rate, as determined under the provisions of section 31-309, to be effective as of any October first following the date of the injury, is greater than the maximum weekly compensation rate prevailing at the date of the injury, the weekly compensation rate which the injured employee was entitled to receive at the date of the injury shall be increased by the percentage of the increase in the maximum weekly compensation rate required by the provisions of section 31-309 from the date of the injury to such October first. The cost-of-living increases provided under this subdivision shall be paid by the employer without any order or award from the commissioner. The adjustments shall apply to each payment made in the next succeeding twelve-month period commencing with the October first next succeeding the date of the injury. . . ."

We use the current statutes herein because there are no relevant differ-

to December, 1982. On December 3, 1984, the decedent filed a workers' compensation claim asserting that during the course of his employment with Pratt & Whitney he had been exposed to various substances that had caused injury to his lungs, heart, eyes, nose and other body parts, leaving him disabled.

The decedent and the defendants subsequently agreed to settle the claim and entered into an agreement entitled "Stipulation for Full and Final Settlement" (stipulation). Under the terms of the stipulation, the defendants agreed to make a lump sum payment to the decedent in return for his agreement to release them from any further liability in connection with his claim. The stipulation purported to "constitute a complete satisfaction of all claims due or to become due at any time in favor of anybody on account of the claimed injuries or on account of any condition in any way resulting out of the said injuries."[4] The parties' stipulation was approved by the commissioner on September 15, 1986.

On December 14, 1991, the decedent died. Approximately two months later, the plaintiff submitted to Pratt & Whitney a claim for survivor's benefits pursuant to § 31-306. The plaintiff alleged that the decedent's

ences, for the purposes of this opinion, between these statutes and those in effect during the administrative proceedings.

[4] The stipulation provides in relevant part: "The payment of SEVENTY-TWO THOUSAND DOLLARS ($72,000) of which the respondent employer and insurer shall pay $36,000 and the respondent Second Injury and Compensation Assurance Fund shall pay $36,000, shall be made and accepted as a full and final settlement for all compensation including specific[ally] for said injuries and for all results upon the claimant past, present and future and for all claims for medical, surgical, hospital and incidental expenses to the end that the payment of such sum shall constitute a complete satisfaction of all claims due or to become due at any time in favor of anybody on account of the claimed injuries or on account of any condition in any way resulting out of the said injuries."

Neither Pratt & Whitney nor the fund admitted any liability for the decedent's injuries.

death was the result of the injuries that he had sustained during the course of his employment with Pratt & Whitney and, consequently, that she was entitled to survivor's benefits.

Pratt & Whitney and Liberty contested the claim and, thereafter, sought its dismissal on the ground that the stipulation barred the plaintiff's recovery.[5] The commissioner denied the motion, concluding that the plaintiff's right to survivor's benefits was independent of the decedent's claim and that the plaintiff was not bound by the stipulation because she was not a signatory to it. The defendants appealed to the review board, which reversed the commissioner's decision on the ground that the plaintiff's application for survivor's benefits was precluded by the stipulation. This appeal followed.

On appeal, the plaintiff contends that the review board improperly concluded that she was not entitled to seek survivor's benefits under § 31-306. Specifically, the plaintiff maintains that her right to compensation under § 31-306 is completely independent of the decedent's rights to compensation for work-related injuries under the Workers' Compensation Act (act),[6] and, accordingly, that the decedent lacked the authority to settle any claim for survivor's benefits that she might later have arising from his work-related injuries. Alternatively, the plaintiff argues that the stipulation cannot reasonably be construed to bar her right to make a

[5] In response to the claim submitted by the plaintiff, Pratt & Whitney and Liberty mailed to the commissioner and the decedent, at his last residence, a notice entitled "Notice to Compensation Commissioner and Employee of Intention to Contest Liability to Pay Compensation." The plaintiff sought to preclude Pratt & Whitney and Liberty from contesting her claim on the ground that this notice was not addressed to her as required by General Statutes § 31-294c. The commissioner and, on appeal, the review board, both rejected the plaintiff's contention. Because we conclude that the stipulation entered into by the decedent and the defendants bars the plaintiff from any recovery, we need not reach this issue.

[6] General Statutes § 31-275 et seq.

claim under § 31-306. We disagree with both of these claims.

## I

The plaintiff first contends that the stipulation entered into by the decedent does not bar her claim for workers' compensation benefits because her rights under § 31-306 are entirely independent of the decedent's compensation rights and, consequently, that the decedent had no authority to compromise her right to seek benefits under § 31-306 after his death. We disagree.

Our resolution of this issue is guided by well established principles of statutory construction. "Our fundamental objective is to ascertain and give effect to the apparent intent of the legislature. . . . In seeking to discern that intent, we look to the words of the statute itself, to the legislative history and circumstances surrounding its enactment, to the legislative policy it was designed to implement, and to its relationship to existing legislation and common law principles governing the same general subject matter. . . ." (Citations omitted; internal quotation marks omitted.) *State* v. *Metz*, 230 Conn. 400, 409, 645 A.2d 965 (1994); *Fleming* v. *Garnett*, 231 Conn. 77, 92, 646 A.2d 1308 (1994). "We have previously recognized that our construction of the Workers' Compensation Act should make every part operative and harmonious with every other part insofar as is possible . . . . In applying these principles, we are mindful that the legislature is presumed to have intended a just and rational result. . . ." (Citations omitted; internal quotation marks omitted.) *Dos Santos* v. *F.D. Rich Construction Co.*, 233 Conn. 14, 20–21, 658 A.2d 83 (1995).

"It is well established that [a]lthough not dispositive, we accord great weight to the construction given to the workers' compensation statutes by the commissioner

and review board. . . . A state agency is not entitled, however, to special deference when its determination of a question of law has not previously been subject to judicial scrutiny." (Citation omitted; internal quotation marks omitted.) *Davis* v. *Norwich*, 232 Conn. 311, 317, 654 A.2d 1221 (1995).

As is often the case in the context of workers' compensation legislation; see *Dos Santos* v. *F.D. Rich Construction Co.*, supra, 233 Conn. 20; the statutory language provides little guidance for our determination of whether the decedent, in settling his own workers' compensation claim, also had the authority to compromise whatever right the plaintiff might have to survivor's benefits. Furthermore, the pertinent legislative history is silent on the question. Several considerations persuade us, however, that, under our statutory scheme, a surviving dependent's right to compensation is subordinate to an employee's right to settle his or her workers' compensation claim.

First, the availability of survivorship benefits under § 31-306 is inextricably linked to, and wholly dependent upon, the existence of a compensable injury or illness suffered by the employee. Thus, in the absence of a work-related injury or illness, a surviving dependent of the employee has no claim whatsoever under § 31-306. Moreover, a dependent has no compensation rights unless and until the employee dies as a result of the occupational injury or disease. Further, the calculation of the amount of survivor's benefits to which a dependent may be entitled is determined as of the date of the employee's injury and not as of the date on which the dependent becomes eligible to receive such benefits. General Statutes § 31-306 (2). Similarly, a person who has not attained dependent status until after the date of the employee's injury is not entitled to bring a claim

under § 31-306. See General Statutes § 31-275 (6).[7] Thus, a surviving dependent's compensation rights under § 31-306 flow directly from the work-related injury or disease suffered by the employee.[8]

Second, our conclusion advances the public policy favoring the pretrial resolution of disputes. As we have

[7] General Statutes § 31-275 (6) provides: " 'Dependent' means a member of the injured employee's family or next of kin who was wholly or partly dependent upon the earnings of the employee at the time of the injury."

[8] Although we have previously had occasion to construe § 31-306, we have not heretofore addressed the precise question presented by this appeal and, therefore, our prior cases are inconclusive on the issue. For example, in *Bassett* v. *Stratford Lumber Co.*, 105 Conn. 297, 300, 135 A. 574 (1926), we held that, upon the employee's death, the unpaid balance of a workers' compensation award to the employee is payable not to the estate of the employee but to the surviving dependents. See also *Cappellino* v. *Cheshire*, 226 Conn. 569, 628 A.2d 595 (1993) (affirming continued viability of *Bassett*). More recently, in *Davis* v. *Norwich*, supra, 232 Conn. 321–22, we considered the effect of an employee's death on an employer's ability to transfer a claim to the fund. We concluded that an employer must file notice of intent to transfer to the fund following the initial claim by the employee; the employee's death does not trigger a second window of opportunity for the employer to do so. As the defendants maintain, these cases lend some support to the conclusion that a claim for survivor's benefits under § 31-306 is merely an adjunct of the employee's disability claim.

On the other hand, we have also stated that "[t]he intent of the Workmen's Compensation Act to make the claim of the injured employee for compensation for his incapacity a personal claim belonging to him alone, and to make the claim of the dependent for compensation come into existence upon the employee's death and to belong wholly to the dependent . . . seems entirely clear . . . ." *Jackson* v. *Berlin Construction Co.*, 93 Conn. 155, 158, 105 A. 326 (1918). In *Biederzycki* v. *Farrel Foundry & Machine Co.*, 103 Conn. 701, 704–705, 131 A.2d 739 (1926), however, we cast doubt on the breadth of our statement in *Jackson*, observing that *Jackson* merely "holds that the classes of compensation awarded the employee and his [or her] dependents are separate and independent of each other. But each arises out of the same compensable injury. If the employee is awarded compensation for an injury, and in consequence of it, subsequently dies, the injury preceding the death and the death arose out of the one injury, compensation for the latter is payable to and belongs to the dependent, while the compensation awarded to the living employee is payable to and belongs to him [or her]." Thus, although it is apparent that the dependent of an injured employee who dies as a result of work-related injuries has certain compensation rights that exist independent of the employee's rights, we have never decided whether

long recognized in the context of civil actions, "the pretrial settlement of claims is to be encouraged because, in the vast number of cases, an amicable resolution of the dispute is in the best interests of all concerned. 'The efficient administration of the courts is subserved by the ending of disputes without the delay and expense of a trial, and the philosophy or ideal of justice is served in the amicable solution of controversies.' *Krattenstein* v. *G. Fox & Co.*, 155 Conn. 609, 614, 236 A.2d 466 (1967). . . . At a time when our courts confront an unprecedented volume of litigation, we reaffirm our strong support for the implementation of policies and procedures that encourage fair and amicable pretrial settlements." *Grayson* v. *Wofsey, Rosen, Kweskin & Kuriansky*, 231 Conn. 168, 174, 646 A.2d 195 (1994). We see no reason to eschew this sound public policy in connection with claims arising under our workers' compensation statutes.

To conclude, as the plaintiff urges, that an employee may not compromise his or her dependent's future rights under § 31-306 would unduly undermine the public interest in the prompt and comprehensive resolution of workers' compensation claims. Under the plaintiff's view, a full, final and global settlement of a workers' compensation claim involving a potentially fatal work-related injury or illness would be impossible without the express authorization of all the employee's dependents. Under such circumstances, it is less likely that a comprehensive settlement would be reached. An employer who is faced with the prospect of litigating additional claims upon the employee's death is less apt to be willing to settle the employee's claim.[9]

the employee, in agreeing to settle his workers' compensation claim, may also compromise any claim that the dependent may have upon his or her death.

[9] We also note that stipulations in settlement of workers' compensation claims must be approved by the commissioner, a requirement that serves to protect interested parties against settlements that are not fair and equita-

Finally, the statutory interpretation advanced by the defendants promotes the public policy in favor of administrative simplicity. As we have noted in a related context, the plaintiff's statutory construction would require employers to maintain records for a considerable period of time after each disability compensation claim had been settled, an interpretation that "would undermine the statutory purpose of administrative simplicity." *Davis* v. *Norwich,* supra, 232 Conn. 323. This construction would also frustrate the related public interest in the finality of administrative determinations.

The plaintiff cites *Muldoon* v. *Homestead Insulation Co.*, 231 Conn. 469, 650 A.2d 1240 (1994), in support of her contention that the act should not be read to permit an employee to settle any possible claim that his or her dependent may have under § 31-306 after the employee's death. In *Muldoon*, the employee and employer entered into a stipulated settlement of the employee's claim for compensation stemming from injuries suffered as a result of exposure to asbestos. Id., 472. Several years after the stipulation was approved, the employee filed a second workers' compensation claim, alleging that, in the interim, additional exposure to asbestos had caused him further injuries. Id., 473. We concluded that the stipulation's preclusion of " 'future . . . claims . . . resulting out of the said injury . . .' " did not foreclose a future claim based upon a subsequent, although similar, injury. Id., 479. We did so in

---

ble. As we have recently stated regarding such stipulations, "[t]he commissioner decides whether to approve a stipulation only after thoroughly reviewing it, along with all the pertinent medical bills and reports, and after evaluating employment possibilities and any concurrent claims. The commissioner undertakes such exhaustive inquiry in order to judge properly whether the stipulation is fair and comprehensive. . . . We can therefore assume that a commissioner is well acquainted with the terms generally used in stipulations and the proper . . . authority conferred upon commissioners by the legislature." (Citation omitted.) *Muldoon* v. *Homestead Insulation Co.*, 231 Conn. 469, 480 n.9, 650 A.2d 1240 (1994).

part "because to decide otherwise would conflict with public policy and the remedial purpose of the act. Except in very rare instances, the settlement and release of a claim does not cover claims based on events that have not yet occurred. . . . The usual general release, then, is not ordinarily construed to include in its coverage claims based upon occurrences which have their beginning after the instrument is executed. . . . For that reason, language covering 'future claims' and 'unknown claims' in releases is ordinarily construed to cover only inchoate claims that are in being at the time of release but which have not yet manifested themselves." (Citations omitted; internal quotation marks omitted.) Id., 481–82.

Contrary to the plaintiff's contention, *Muldoon* does not support a conclusion that an injured employee who settles his or her workers' compensation claim is without authority to compromise any claims that his or her surviving dependents might have under § 31-306. In fact, the claim asserted by the plaintiff is much more analogous to an "inchoate [claim] that [is] in being at the time of release but which [has] not yet manifested [itself]" than it is to the unforeseeable subsequent injury that was suffered by the employee in *Muldoon*. Id., 481–82. Although it is true, of course, that the plaintiff's rights under § 31-306 did not arise until after the stipulation had been signed, the decedent's death was a reasonably foreseeable consequence of the disabling occupational injuries that he had suffered and, accordingly, such a consequence was likely within the contemplation of the parties when they agreed to bar all claims "on account of any condition in any way resulting out of the said injuries."[10]

---

[10] The plaintiff points to cases from other jurisdictions, cited in 2 A. Larson, Workmen's Compensation (1996) § 64.11, pp. 11-195–11-203, to support her contention that the stipulation does not bar her claim under § 31-306. Each of the cases relied on by the plaintiff, however, is distinguishable from the

In light of the derivative nature of the rights created under § 31-306 and the public policy considerations involved, we agree with the review board that, under our workers' compensation scheme, an employee, in settling his or her claim for disability compensation, may also compromise his or her surviving dependents' rights under § 31-306.[11] Having determined that the decedent had the authority to extinguish the plaintiff's rights under § 31-306, we now turn to the question of whether the review board properly concluded that the stipulation accomplished that end.[12]

II

The plaintiff maintains that even if the decedent had the authority to extinguish her rights under § 31-306, the stipulation was ineffective in doing so. We disagree.

In the context of workers' compensation, "[a] stipulation is a compromise and release type of settlement similar to settlements in civil personal injury cases where a claim is settled with a lump sum payment accompanied by a release of the adverse party from

present case, because in none of those cases had the employee entered into a full, final and comprehensive settlement of his claim prior to his death.

[11] As the review board stated, "[a]ll existing rights to compensation for [the decedent's] compensable injuries were vested in [him] at the time he signed the stipulation. No claim then existed that was not personal to him. Therefore, [the decedent] had the authority at the time the settlement was reached to release the [defendants] from liability for future claims arising out of his allegedly compensable injuries."

[12] The defendants maintain that the plaintiff's right to compensation under § 31-306 is wholly derivative of the decedent's rights and, arguing by analogy to our law concerning loss of consortium claims; see *Hopson* v. *St. Mary's Hospital*, 176 Conn. 485, 494, 408 A.2d 260 (1979); contend that any settlement of a workers' compensation claim by an injured employee and his or her employer bars recovery by a surviving dependent. We disagree with the defendants' categorical characterization of the rights established under § 31-306 as derivative. We hold today only that an employee has the *authority* to compromise the compensation rights of his or her dependents and that a clear and unequivocal expression of intent to do so by the employee will bar a claim under § 31-306.

further liability. . . . Although the act does not explicitly provide for this type of settlement, we have consistently upheld the ability to compromise a compensation claim as inherent in the power to make a voluntary agreement regarding compensation. . . ." (Citation omitted; internal quotation marks omitted). *Muldoon* v. *Homestead Insulation Co.*, supra, 231 Conn. 479–80.[13]

The stipulation entered into by the decedent and the defendants provides that it is in "complete satisfaction of *all claims* due or to become due at *any time* in favor of *anybody* on account of the claimed injuries or on account of *any condition in any way* resulting out of the said injuries." (Emphasis added.) There is no doubt that the stipulation was intended to be broad in scope and, by its plain terms, purported to foreclose any and all workers' compensation claims arising out of the decedent's alleged injuries. On its face, then, the stipulation clearly encompasses a workers' compensation claim filed under § 31-306.[14]

Notwithstanding the unambiguous breadth of the stipulation, the plaintiff argues that the word "anybody" in the stipulation reasonably can be construed to include only the estate of the decedent and his creditors but not his surviving dependents. As the review board stated in reversing the decision of the commissioner, however, " '[a]nybody' is a far more general term that simply refers to any person, and we will not favor a

[13] "There are three types of stipulations [in workers' compensation cases]: (1) a full and final stipulation that closes all aspects of the claim whether they are for past, present or future wages and medical expenses, known and unknown; (2) a stipulation to date that is used to close out only a portion of a claim with the remainder left open or that is used to close out an entire claim but only up to a certain date; and (3) an open medical stipulation that closes all aspects of the claim except for medical expenses that are related to the accident or the disease." *Muldoon* v. *Homestead Insulation Co.*, supra, 231 Conn. 480.

[14] Furthermore, the plaintiff has adduced no facts to suggest that we should ignore the plain language of the stipulation.

strained interpretation of that term over a straightforward one. We think it evident that the parties to the agreement contemplated the release of *all claims* that might result from the [decedent's] previous injuries, including those arising in favor of a third party." (Emphasis added.) Because we agree with the conclusion of the review board, we reject the plaintiff's argument regarding the scope of the stipulation.[15]

The decision of the review board is affirmed.

In this opinion the other justices concurred.

---

[15] In light of our resolution of this issue, we need not decide whether the plaintiff's notice of claim was untimely pursuant to General Statutes § 31-294c, as maintained by the defendants.