## PAUL SCHROEDER ET AL. *v.* TRIANGULUM ASSOCIATES ET AL.
### (SC 16283)
### (SC 16284)

Borden, Katz, Palmer, Vertefeuille and Zarella, Js.

Argued September 10, 2001—officially released February 5, 2002

*Eliot D. Prescott,* assistant attorney general, with whom were *Yinxia Long,* assistant attorney general, and, on the brief, *Richard Blumenthal,* attorney general, *Carolyn K. Querijero,* deputy attorney general, and *Gregory T. D'Auria,* assistant attorney general, for the appellant (intervening plaintiff second injury fund).

*James Wu,* for the appellant-appellee (named plaintiff).

*Philip O'Connor,* with whom were *Brian M. Gildea* and, on the brief, *Patty G. Swan,* for the appellees-

appellant (named defendant et al. and defendant DeZinno and Associates, Inc.).

*Michael Brodinsky*, for the appellee (intervening plaintiff Airborne Freight Corporation).

*Opinion*

VERTEFEUILLE, J. The dispositive issue in this consolidated appeal is whether the trial court improperly refused to set aside the jury's verdict, which awarded an injured employee substantially all of the economic damages that he sought, but zero noneconomic damages. We conclude that the verdict was inadequate as a matter of law, and, accordingly, we reverse the judgment of the trial court and order a new trial. We also will address two additional issues that are likely to arise again in the new trial, namely, whether social security disability benefits are a collateral source under General Statutes § 52-225b, and whether the second injury fund (fund) is entitled to reimbursement for a lump sum settlement it paid pursuant to a voluntary workers' compensation agreement authorized by General Statutes § 31-296. We conclude that social security disability benefits are not a collateral source, and that the fund is entitled to reimbursement for the settlement.

The named plaintiff, Paul Schroeder (plaintiff),[1] brought the negligence action underlying this consolidated appeal against Triangulum Associates, F.M. Heritage Company, Henry J. Paparazzo, Robert E. DeZinno and DeZinno and Associates, Inc. The plaintiff's employer, Airborne Freight Corporation (Airborne), and the fund, both of which had paid workers' compensation benefits to the plaintiff, were permitted to intervene in the action to seek reimbursement for workers' compensation benefits they had paid. The jury returned

_____

[1] A second plaintiff named in the original complaint, Linda Machera, later withdrew her claims and was not included in the amended complaint dated February 8, 1999. We therefore refer to Schroeder as the plaintiff.

a plaintiff's verdict against DeZinno and Associates, Inc., only, finding in favor of the remaining defendants.[2] The plaintiff and the fund filed separate appeals from the judgment of the trial court, and the defendant filed a cross appeal in the plaintiff's appeal. After the appeals were consolidated, we transferred them to this court pursuant to General Statutes § 51-199 (c) and Practice Book § 65-2.

The jury reasonably could have found the following facts. On September 15, 1992, the plaintiff was employed by Airborne as a courier. While making a delivery to the Country Tavern restaurant in Southbury, the plaintiff was injured when he struck his head on a door frame that was approximately one foot lower than the other door frames in the restaurant. The Country Tavern restaurant was owned and operated by the defendant.

After paying the plaintiff certain workers' compensation benefits, Airborne transferred its liability for any further compensation related to the plaintiff's injury to the fund. The plaintiff and the fund subsequently entered into a stipulated agreement (agreement) and award that settled all claims between the plaintiff and the fund with regard to the plaintiff's injury. Pursuant to this agreement, the fund paid the plaintiff a lump sum settlement of $200,000. A workers' compensation commissioner approved the agreement and award.

The plaintiff subsequently filed the present action, claiming that his injuries were caused by the defendant's negligent maintenance of the restaurant premises and its failure to warn of the danger presented by the low door frame. The defendant responded by filing a special defense alleging that the plaintiff's injuries were caused by his own negligence in failing to exercise

---

[2] Because DeZinno and Associates, Inc., is the only defendant involved in these appeals, we will refer to it as the defendant.

ordinary care when entering the area with the low door frame.

The jury returned a verdict in favor of the plaintiff for economic damages in the amount of $750,400, but no noneconomic damages. The jury also found that the plaintiff was 49 percent negligent in causing his injuries and the verdict was reduced accordingly. Following trial, the plaintiff and the defendant both moved to set aside the verdict and the defendant moved for a collateral source hearing. The trial court granted the defendant's motion for a collateral source hearing and further reduced the plaintiff's verdict by the amount of social security disability benefits that he had received prior to trial. The trial court thereafter denied both motions to set aside the verdict, and these appeals followed. Further facts will be set forth as necessary.

I

The plaintiff first claims that the trial court improperly refused to grant his motion to set aside the verdict and for a new trial as to damages. The plaintiff contends that the jury's verdict is inadequate as a matter of law because it awarded substantially all the economic damages that the plaintiff sought, but zero noneconomic damages. We agree that under the circumstances of this case, the trial court should have set aside the verdict and ordered a new trial.

We begin by setting forth the trial court's role in passing upon a motion to set aside the verdict. "In passing upon a motion to set aside a verdict, the trial judge must do just what every juror ought to do in arriving at a verdict. The juror must use all his experience, his knowledge of human nature, his knowledge of human events, past and present, his knowledge of the motives which influence and control human action, and test the evidence in the case according to such knowledge and render his verdict accordingly. . . .

The trial judge in considering the verdict must do the same . . . and if, in the exercise of all his knowledge from this source, he finds the verdict to be so clearly against the weight of the evidence in the case as to indicate that the jury did not correctly apply the law to the facts in evidence in the case, or were governed by ignorance, prejudice, corruption or partiality, then it is his duty to set aside that verdict and to grant a new trial. . . . The trial judge has a broad legal discretion and his action will not be disturbed unless there is a clear abuse." (Citations omitted; internal quotation marks omitted.) *Birgel* v. *Heintz*, 163 Conn. 23, 27, 301 A.2d 249 (1972).

We recently established a case-specific standard for reviewing a jury's verdict to determine whether it is inconsistent and therefore legally inadequate. In *Wichers* v. *Hatch*, 252 Conn. 174, 188, 745 A.2d 789 (2000), we held that trial courts, when confronted with jury verdicts awarding economic damages and zero noneconomic damages, must determine on a case-by-case basis whether a verdict is adequate as a matter of law. *Wichers* resolved some inconsistency in our prior cases addressing how a trial court should handle a jury verdict awarding the plaintiff economic damages but no noneconomic damages.

Under *Wichers*, "the jury's decision to award economic damages and zero noneconomic damages is best tested in light of the circumstances of the particular case before it. Accordingly, the trial court should examine the evidence to decide whether the jury reasonably could have found that the plaintiff had failed in his proof of the issue." Id., 188–89. Our review of the trial court's decision is limited to whether the trial court properly exercised its discretion. Id., 181. Although the scope of our review is narrow, we nevertheless conclude that the trial court in the present case abused its discretion when it refused to set aside the verdict.

The following additional facts are necessary to our resolution of this issue. At trial, the plaintiff presented evidence regarding the nature of his injuries and the medical treatment necessary to treat those injuries. The plaintiff's physician testified that the plaintiff underwent a surgical procedure to fuse a portion of his spine. This procedure involves the removal of two spinal discs, followed by the removal of bone from the spinal column. The removed bone is then forced into the empty space in the spinal column, where over time it fuses with the surrounding bone and becomes part of the spinal column. The physician further testified that the plaintiff suffered a 30 percent permanent partial disability as a result of this significant injury.[3]

The defendant disputed the permanency of the plaintiff's injuries at trial. The defendant also presented evidence that, prior to being injured at the Country Tavern restaurant, the plaintiff had been injured when a firecracker exploded near his ear, and that subsequent to his injury at the restaurant, the plaintiff had been involved in an automobile accident and had fallen into a sinkhole. The defendant claimed that these incidents were at least partially responsible for the plaintiff's injuries.

The plaintiff argues that, given the nature of his injuries and especially the substantial invasiveness of the spinal fusion surgery, a jury reasonably could not award substantially all of the plaintiff's economic damages, including the medical expenses related to the spinal fusion, but zero noneconomic damages. General Statutes § 52-572h (a), which sets forth the relevant definitions of economic and noneconomic damages, provides in relevant part: "(1) 'Economic damages' means com-

---

[3] The plaintiff was also treated for a traumatic brain injury. His neurosurgeon testified that the plaintiff suffered a 10 percent permanent partial disability as a result of this injury.

pensation determined by the trier of fact for pecuniary losses including, but not limited to, the cost of reasonable and necessary medical care, rehabilitative services, custodial care and loss of earnings or earning capacity excluding any noneconomic damages; (2) 'noneconomic damages' means compensation determined by the trier of fact for all nonpecuniary losses including, but not limited to, physical pain and suffering and mental and emotional suffering . . . ."

As the defendant conceded in oral argument in this court, the jury in this case, before determining the comparative negligence of the plaintiff, awarded to the plaintiff virtually all of his claimed economic damages, but no noneconomic damages.[4] This award indicates that, as between the defendant and other possible causes of the plaintiff's injuries, excluding the plaintiff, the jury found the defendant to be liable for the plaintiff's injuries. See *Gladu* v. *Sousa*, 52 Conn. App. 796, 800, 727 A.2d 1286, appeal dismissed, 252 Conn. 190, 745 A.2d 798 (2000); *Jeffries* v. *Johnson*, 27 Conn. App. 471, 476, 607 A.2d 443 (1992). This finding is inconsistent, however, with the jury's finding that the plaintiff incurred no noneconomic damages, which indicates that the jury did not find the defendant liable for any pain and suffering or any permanent injury whatsoever. It is not reasonable for the jury to have found the defendant liable for the expense of the spinal fusion surgery, but not liable for the pain and permanent disability necessarily attendant to such intrusive surgery. Under these circumstances, the jury reasonably could not have found the defendant to be responsible initially for the full amount of the plaintiff's economic damages, but not liable for any noneconomic damages. The trial court therefore abused its discretion in failing to set aside the verdict and ordering a new trial.

---

[4] At oral argument, counsel for the defendant conceded that the jury awarded the plaintiff virtually all of his claimed economic damages.

The defendant claims that the trial court's decision not to grant a new trial in this case is consistent with our decision in *Wichers*. In *Wichers*, the jury awarded the plaintiff the exact amount of his present medical expenses, but zero noneconomic damages. *Wichers* v. *Hatch*, supra, 252 Conn. 179. The trial court held that the verdict was inadequate as a matter of law because the jury had awarded economic damages and zero noneconomic damages. Id., 179–80. In reversing the judgment of the trial court, we concluded that "the jury could have accepted the evidence that it was advisable for the plaintiff to see his chiropractor more frequently than usual following the accident, but that the accident did not cause him actually to suffer greater pain than he already had experienced as a result of his preexisting condition. Certainly, the jury reasonably could have found that the accident had not aggravated the plaintiff's condition, and that his pain was the same as what he had experienced before his accident with the defendant." Id., 189–90.

Unlike the plaintiff in *Wichers*, however, the plaintiff in the present case underwent invasive spinal surgery. The jury reasonably could not have initially found the defendant liable for the expense of the surgery but not responsible for any pain or disability attendant to such surgery. This is in stark contrast to the facts of *Wichers*, wherein the plaintiff, as a result of his injury, merely underwent additional chiropractic treatment for an aggravation of a preexisting injury, leaving the jury free to determine whether the plaintiff had incurred any additional pain and suffering as a result of the defendant's negligence.

The defendant further argues that the verdict was proper because the jury could have credited the evidence that tended to show that the plaintiff's injuries were caused by incidents unrelated to his injury at the Country Tavern restaurant. The jury clearly did not

credit such evidence, however, because it initially found the defendant to be fully liable for substantially all of the plaintiff's claimed economic damages, including medical expenses for the plaintiff's spinal injury.[5]

The plaintiff, without citing authority, contends that the new trial should be limited to the issue of damages only. We disagree. "Ordinarily the reversal of a jury verdict requires a new trial of all the issues in the case. Where the error as to one issue . . . is separable from the general issues, the new trial may be limited to the error found, provided that such qualification or limitation does not work injustice to the other issues or the case as a whole. *Murray* v. *Krenz*, 94 Conn. 503, 507, 109 A. 859 (1920). But where the retrial of the single issue may affect the other issues to the prejudice of either party, the court will not exercise its discretion in limiting the new trial but will grant it de novo." (Internal quotation marks omitted.) *George* v. *Ericson*, 250 Conn. 312, 332, 736 A.2d 889 (1999). We have held repeatedly that issues of liability and damages are not separable but instead are " 'inextricably interwoven' "; id., 333; thus requiring a new trial as to both liability and damages "unless the court can clearly see that this is the way of doing justice in [a] case." (Internal quotation marks omitted.) Id., 332–33. The plaintiff has not attempted to show that justice requires that a new trial be limited to the issue of damages only. Thus, we hold that a new trial as to both liability and damages is warranted.

## II

We next address the fund's claim[6] that it is entitled to be reimbursed from any damages that the plaintiff

[5] Our conclusion on the facts of this case does not foreclose the possibility, in accordance with *Wichers* v. *Hatch*, supra, 252 Conn. 188–89, that a jury in a case with different facts reasonably could award the full amount of a plaintiff's claimed economic damages but no noneconomic damages.

[6] We address this claim and the third claim resolved in this opinion because of the likelihood that these issues will arise again at the new trial.

recovers against the defendant for the amount the fund paid pursuant to the agreement and award pursuant to General Statutes (Rev. to 1993) § 31-293, as amended by Public Acts 1993, No. 93-228, § 7, and General Statutes § 31-352.[7] More specifically, the fund claims that

---

[7] General Statutes (Rev. to 1993) § 31-293 (a), as amended by Public Acts 1993, No. 93-228, § 7, provides in relevant part: "When any injury for which compensation is payable under the provisions of this chapter has been sustained under circumstances creating in a third person other than the employer a legal liability to pay damages for the injury, the injured employee may claim compensation under the provisions of this chapter, but the payment or award of compensation shall not affect the claim or right of action of the injured employee against the third person, but the injured employee may proceed at law against the third person to recover damages for the injury; and any employer having paid, or having become obligated to pay, compensation under the provisions of this chapter may bring an action against the third person to recover any amount that he has paid or has become obligated to pay as compensation to the injured employee. . . . If the employer and the employee join as parties plaintiff in the action and any damages are recovered, the damages shall be so apportioned that the claim of the employer, as defined in this section, shall take precedence over that of the injured employee in the proceeds of the recovery . . . . For the purposes of this section, the claim of the employer shall consist of (1) the amount of any compensation which he has paid on account of the injury which is the subject of the suit and (2) an amount equal to the present worth of any probable future payments which he has by award become obligated to pay on account of the injury. The word 'compensation', as used in this section, shall be construed to include incapacity payments to an injured employee, payments to the dependents of a deceased employee, sums paid out for surgical, medical and hospital services to an injured employee, the burial fee provided by subdivision (1) of subsection (a) of section 31-306, as amended by section 15 of this act, payments made under the provisions of sections 31-312 and 31-313, and payments made under the provisions of section 31-284b in the case of an action brought under this section by the employer or an action brought under this section by the employee in which the employee has alleged and been awarded such payments as damages. . . . Notwithstanding the provisions of this subsection, when any injury for which compensation is payable under the provisions of this chapter has been sustained under circumstances creating in a third person other than the employer a legal liability to pay damages for the injury and the injured employee has received compensation for the injury from his employer or its workers' compensation insurance carrier pursuant to the provisions of this chapter, the employer or insurance carrier shall have a lien upon any judgment received by the employee against the third party or any settlement received by the employee from the third party, provided

it is entitled to reimbursement because the settlement paid to the plaintiff pursuant to the agreement is an "amount equal to the present worth of any probable future payments" the fund was obligated to pay within the meaning of § 31-293. Although we disagree with the fund's characterization of the settlement it paid pursuant to the agreement, we hold that the fund is nevertheless entitled to recover the settlement proceeds as "compensation" paid within the meaning of § 31-293.[8]

The following additional facts are necessary to our resolution of this issue. The fund and the plaintiff agreed that, in exchange for the payment of $200,000 by the fund, the plaintiff would forgo all workers' compensation claims arising out of the injury that the plaintiff incurred on the defendant's premises. That agreement was manifested in the stipulated agreement and award that was approved by a workers' compensation commissioner. In the agreement, the parties stipulated that the

the employer or insurance carrier shall give written notice of the lien to the third party prior to such judgment or settlement."

This revision of § 31-293 (a), as amended by Public Act 93-228, § 7, was the statute in effect at the time the action in this case was filed in 1994.

General Statutes § 31-352 provides: "The provisions of section 31-293 shall apply to any payments from the Second Injury Fund and the Treasurer is authorized to bring an action, or join in an action as provided by said section, when he has paid, or by award has become obligated to pay, compensation out of the fund."

In 1996, § 31-293 (a) was amended by the addition of specific language providing the custodian of the fund the right to bring an action for reimbursement. See Public Acts 1996, No. 96-65, § 2.

[8] We reject the fund's argument that the settlement paid represented the "present worth of any probable future payments" under § 31-293. The workers' compensation commissioner did not commute the present value of the future payments to a lump sum, as required by General Statutes § 31-302. The agreement makes no mention of such a commutation, and the sum paid was clearly the result of a compromise rather than a commutation of the total amount the fund owed to the plaintiff. Furthermore, counsel for the fund admitted in a memorandum of law before the trial court that the present value of future payments owed to the plaintiff would be approximately $800,000.

outcome of further legal proceedings would be "doubtful," and that the settlement paid was intended to resolve all claims and proceedings between the parties with regard to the plaintiff's injury.[9] The parties did, however, reserve their respective rights under § 31-293.[10]

A brief overview of the workers' compensation principles that are implicated by this issue is warranted. When an employee suffers a work-related injury, workers' compensation benefits are the exclusive remedy as between the employee and the employer. See General Statutes § 31-284 (a).[11] The employee, however, may

---

[9] Paragraph six of the agreement provided: "Therefore, in view of the number of technical, legal, and medical questions involved and in view of the other doubts in the case as outlined by the claims of the parties hereto, it is hereby agreed and understood by and between the Claimant and the Respondent, Fund, and all parties to the controversy that while their respective claims are made in good faith, the claim is disputed and the outcome, if fully prosecuted, would be doubtful."

Paragraph seven of the agreement provided: "Therefore, it is agreed by and between the parties that the Respondent, Fund, shall pay to the Claimant, Paul Schroeder, the sum of $200,000."

[10] Paragraph fourteen of the stipulation provided: "It is further agreed by and between the parties . . . that none of the parties hereafter shall have any further claims under the Workers' Compensation Act of the State of Connecticut because of the alleged occurrence herein described, except such rights granted by said Act under Section 31-293 and any amendments thereto."

[11] General Statutes § 31-284 (a) provides: "An employer who complies with the requirements of subsection (b) of this section shall not be liable for any action for damages on account of personal injury sustained by an employee arising out of and in the course of his employment or on account of death resulting from personal injury so sustained, but an employer shall secure compensation for his employees as provided under this chapter, except that compensation shall not be paid when the personal injury has been caused by the wilful and serious misconduct of the injured employee or by his intoxication. All rights and claims between an employer who complies with the requirements of subsection (b) of this section and employees, or any representatives or dependents of such employees, arising out of personal injury or death sustained in the course of employment are abolished other than rights and claims given by this chapter, provided nothing in this section shall prohibit any employee from securing, by agreement with his employer,

bring a civil action against parties other than the employer who are responsible for the employee's injuries. See General Statutes § 31-293. When an employee brings such an action, §§ 31-293 and 31-352 provide that the fund, or the plaintiff's employer, may join the proceedings as a plaintiff and recover from the judgment against the third party any compensation benefits paid. Specifically, the statutes provide the fund with a right of reimbursement from the judgment against the third party for "(1) the amount of any compensation which [it] has paid on account of the injury which is the subject of the suit and (2) an amount equal to the present worth of any probable future payments which he has by award become obligated to pay on account of the injury." General Statutes § 31-293 (a).

We begin our analysis by observing that General Statutes § 31-296 specifically authorizes a voluntary agreement with regard to compensation, and provides that such an agreement is to be binding upon the parties as an award if it is approved by a workers' compensation commissioner.[12] Although § 31-296 does not specifically provide for compromise agreements, "we have consistently upheld the ability to compromise a compensation claim as inherent in the power to make a voluntary agreement regarding compensation." *Muldoon* v.

additional compensation from his employer for the injury or from enforcing any agreement for additional compensation."

[12] General Statutes § 31-296 provides in relevant part: "If an employer and an injured employee, or in case of fatal injury his legal representative or dependent, at a date not earlier than the expiration of the waiting period, reach an agreement in regard to compensation, such agreement shall be submitted in writing to the commissioner by the employer with a statement of the time, place and nature of the injury upon which it is based; and, if such commissioner finds such agreement to conform to the provisions of this chapter in every regard, he shall so approve it. A copy of the agreement, with a statement of the commissioner's approval thereof, shall be delivered to each of the parties and thereafter it shall be as binding upon both parties as an award by the commissioner. . . ."

*Homestead Insulation Co.*, 231 Conn. 469, 480, 650 A.2d 1240 (1994).

The agreement in this case was approved by a workers' compensation commissioner and thus constituted an "award" within the meaning of § 31-296. The issue we must resolve is whether the payment made pursuant to the voluntary agreement as authorized by § 31-296 is "compensation" within the ambit of § 31-293. We conclude that it is.

As a threshold matter, we must first determine the applicable standard of review that governs our examination of the fund's claim. Because this issue requires that we decide whether the settlement paid by the fund pursuant to the agreement is compensation within the meaning of § 31-293, a question of statutory construction is involved. Thus, our review of the trial court's conclusion is plenary. See *Doyle* v. *Metropolitan Property & Casualty Ins. Co.*, 252 Conn. 79, 84, 743 A.2d 156 (1999).

When construing a statute, "[o]ur fundamental objective is to ascertain and give effect to the apparent intent of the legislature. . . . In seeking to discern that intent, we look to the words of the statute itself, to the legislative history and circumstances surrounding its enactment, to the legislative policy it was designed to implement, and to its relationship to existing legislation and common law principles governing the same general subject matter." (Internal quotation marks omitted.) *Fleming* v. *Garnett*, 231 Conn. 77, 91–92, 646 A.2d 1308 (1994); *State* v. *Metz*, 230 Conn. 400, 409, 645 A.2d 965 (1994). "We have previously recognized that our construction of the Workers' Compensation Act should make every part operative and harmonious with every other part insofar as is possible . . . . In applying these principles, we are mindful that the legislature is presumed to have intended a just and rational result."

(Internal quotation marks omitted.) *Duni* v. *United Technologies Corp.*, 239 Conn. 19, 24, 682 A.2d 99 (1996).

We begin with the language of the statutory provision in question. Section 31-293 (a) provides that "[t]he word 'compensation', as used in this section, shall be construed to include incapacity payments to an injured employee, payments to the dependents of a deceased employee, sums paid out for surgical, medical and hospital services to an injured employee . . . ." Section 31-293 does not mention specifically sums paid pursuant to voluntary agreements. The language "shall be construed to include" indicates, however, legislative intent to broaden, rather than restrict, the scope of the word compensation in § 31-293. "When 'include' is utilized, it is generally improper to conclude that entities not specifically enumerated are excluded." 2A J. Sutherland, Statutory Construction (6th Ed. Singer 2000) § 47:23, p. 316. Thus, we reject an interpretation of § 31-293 that forecloses the inclusion of payments made pursuant to voluntary settlement agreements.

Construing the word compensation to include sums paid pursuant to voluntary agreements also ensures that we "make every part [of the Workers' Compensation Act] operative and harmonious . . . insofar as is possible . . . ." (Internal quotation marks omitted.) *Duni* v. *United Technologies Corp.*, supra, 239 Conn. 24. Section 31-296, which authorizes voluntary workers' compensation agreements and provides that such agreements shall be binding upon the parties, clearly was intended to facilitate and encourage the use of such voluntary agreements. If we were to conclude that settlements paid pursuant to those agreements are not recoverable by employers under § 31-293, we would create a strong incentive for employers and the fund to contest liability and avoid settling whenever an employee might have a cause of action against a third party. We should not interpret one section of the act

in a manner contrary to the policy expressed in another section of the act.

We draw further support for our conclusion from the well established public policy favoring the pretrial resolution of disputes. "[T]he pretrial settlement of claims is to be encouraged because, in the vast number of cases, an amicable resolution of the dispute is in the best interests of all concerned. 'The efficient administration of the courts is subserved by the ending of disputes without the delay and expense of a trial, and the philosophy or ideal of justice is served in the amicable solution of controversies.' *Krattenstein* v. *G. Fox & Co.*, 155 Conn. 609, 614, 236 A.2d 466 (1967). . . . At a time when our courts confront an unprecedented volume of litigation, we reaffirm our strong support for the implementation of policies and procedures that encourage fair and amicable pretrial settlements." (Citations omitted.) *Grayson* v. *Wofsey, Rosen, Kweskin & Kuriansky*, 231 Conn. 168, 174, 646 A.2d 195 (1994). We have held that these policy considerations are equally applicable to claims arising under our workers' compensation statutes. See *Duni* v. *United Technologies Corp.*, supra, 239 Conn. 27. If we were to conclude that sums paid pursuant to voluntary agreements are not recoverable by employers or the fund under § 31-293, we would establish a strong disincentive to settlement that "would unduly undermine the public interest in the prompt and comprehensive resolution of workers' compensation claims." Id.

Finally, the language of the agreement and award supports our conclusion that the sum is compensation. The agreement provides in paragraph nine that "[i]t is further agreed that upon and in consideration of payment by the Respondent, Fund, this agreement shall be made and accepted as a Full and Final settlement for all *compensation* for said injury . . . ." (Emphasis added.) Furthermore, the parties, including the fund,

specifically reserved their rights under § 31-293 in the agreement, thus demonstrating their intent that the statutory right to reimbursement be preserved.[13]

For the foregoing reasons, we conclude that settlement payments made pursuant to voluntary workers' compensation agreements are compensation within the meaning of § 31-293. Accordingly, the fund is entitled to be reimbursed from any judgment the plaintiff may obtain against the defendant following the new trial.

## III

The final issue that we address in these appeals is whether social security disability benefits are a collateral source as defined by § 52-225b.[14] After a collateral source hearing following the return of the jury's verdict, the trial court concluded that social security benefits are a collateral source and reduced the plaintiff's verdict by the amount of those benefits that the plaintiff had received prior to trial.[15] The plaintiff contends that social security disability benefits are not a collateral source within the definition of that term as contained in § 52-225b. We agree.

Deciding whether social security disability benefits are a collateral source within the meaning of § 52-225b involves a question of statutory construction. Our

[13] See footnote 10 of this opinion.

[14] General Statutes § 52-225b provides in relevant part: "For purposes of sections 52-225a to 52-225c, inclusive: 'Collateral sources' means any payments made to the claimant, or on his behalf, by or pursuant to: (1) Any health or sickness insurance, automobile accident insurance that provides health benefits, and any other similar insurance benefits, except life insurance benefits available to the claimant, whether purchased by him or provided by others; or (2) any contract or agreement of any group, organization, partnership or corporation to provide, pay for or reimburse the costs of hospital, medical, dental or other health care services. . . ."

[15] The sum of $31,932.99 represents the total amount of social security benefits received by the plaintiff ($62,613.70), reduced by the amount of negligence the jury assessed to the plaintiff (49 percent).

review, therefore, is plenary. See *Doyle* v. *Metropolitan Property & Casualty Ins. Co.*, supra, 252 Conn. 84.

We begin our analysis with the statutory language in question. Section 52-225b defines collateral sources as "any payments made to the claimant, or on his behalf, by or pursuant to: (1) Any health or sickness insurance, automobile accident insurance that provides health benefits, and any other similar insurance benefits, except life insurance benefits available to the claimant, whether purchased by him or provided by others; or (2) any contract or agreement of any group, organization, partnership or corporation to provide, pay for or reimburse the costs of hospital, medical, dental or other health care services. . . ." General Statutes § 52-225b. It is undisputed that social security disability benefits are not payments made pursuant to "any contract or agreement" within the second definition contained in § 52-225b. The issue, then, is whether social security benefits are "health or sickness insurance" within the first definition of collateral source contained in § 52-225b. We conclude that they are not.

Section 52-225b was enacted in 1985 as part of Connecticut's tort reform legislation. Our legislature modeled § 52-225b after Florida's statutory definition of collateral sources. See 28 H.R. Proc., Pt. 27, 1985 Sess., p. 9828, remarks of Representative William L. Wollenberg; see Fla. Stat. c. 627.7372 (1985).[16] A comparison

---

[16] Fla. Stat. c. 627.7372 (2) (1985) provides: "For the purposes of this section, 'collateral sources' means any payments made to the claimant, or on his behalf, by or pursuant to:

"(a) The United States Social Security Act; any federal, state, or local income disability act; or any other public programs providing medical expenses, disability payments, or other similar benefits.

"(b) Any health, sickness, or income disability insurance; automobile accident insurance that provides health benefits or income disability coverage; and any other similar insurance benefits except life insurance benefits available to the claimant, whether purchased by him or provided by others.

"(c) Any contract or agreement of any group, organization, partnership, or corporation to provide, pay for, or reimburse the costs of hospital, medical, dental, or other health care services.

of the two statutes shows that the language of § 52-225b is taken nearly verbatim from its Florida counterpart. Connecticut's statute, however, is much narrower in its definition of collateral sources. More specifically, § 52-225b contains two categories of collateral sources, whereas Florida's statute contains four. In defining collateral sources, our legislature omitted two of the categories contained in the Florida statute. One of the omitted categories specifically defines collateral sources as "any payments made to the claimant, or on his behalf, by or pursuant to . . . (a) The United States Social Security Act . . . ." Fla. Stat. c. 627.7372 (2) (1985). The fact that our legislature modeled § 52-225b after the Florida statute, but specifically omitted a category of collateral sources that included social security benefits, is persuasive evidence that our legislature intended to exclude social security benefits from the ambit of § 52-225b.

The defendant argues that social security benefits are "health or sickness insurance" within the scope of § 52-225b, claiming that social security disability payments and insurance benefits are "similar" because both compensate employees who are unable to work due to disability, and both involve a collective pooling of risk. The defendant also cites a federal statute, 42 U.S.C. § 423 (a), that styles social security benefits as "disability insurance benefits." However appealing these arguments may be in the abstract, they are belied by the legislative history of § 52-225b, which reveals an intentional decision by our legislature to exclude social security disability benefits from the definition of collateral sources. Accordingly, we hold that social security disability benefits are not a collateral source as that term is defined in § 52-225b.

"(d) Any contractual or voluntary wage continuation plan provided by employers or any other system intended to provide wages during a period of disability."

We note that this section of the Florida statutes was repealed in 1993.

The judgment is reversed and the case is remanded for a new trial.

In this opinion the other justices concurred.