[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MORANDUM OF DECISION ON PLAINTIFFS' POST-VERDICT MOTIONS
This case arose out of an incident which took place at Christos Restaurant ("Christos") in Oxford, Connecticut on August 16, 1997. The plaintiffs, Kim Fleming ("Fleming"), Jason Morrow ("Morrow") and Michael Sigovich ("Sigovich"), claimed they sustained personal injuries as a result of the negligence of the defendants Christos Gogas ("Gogas") and Derek Geanuracos ("Geanuracos"). The defendants denied the allegations of the plaintiffs' complaint and raised a special defense of comparative negligence. In brief, the evidence established that the plaintiffs, along with other friends, arrived late on August 15, 1997 at Christos Restaurant after having consumed alcoholic beverages at Fleming's home. While at Christos, they had three rounds of drinks. An altercation took place between a member of the plaintiffs' party, Fleming's boyfriend Eric Lipusz, Sigovich and an employee of Christos. This led to a confrontation outside the premises involving Gogas and Geanuracos, who were escorting Lipusz and Sigovich off the premises, and a crowd of individuals including Fleming and Morrow. Morrow had followed Gogas and Geanuracos as they were escorting Lipusz and Sigovich toward the street. Fleming was part of a crowd of people who had gathered at the gate of the restaurant near the street. Fleming was described by all witnesses as combative and admitted yelling profanities at Gogas. There was a brawl. At some point, Fleming fell over a boat trailer. She was subsequently transported from the scene by ambulance. Sigovich and Morrow also sustained injuries.
The case was tried before a jury from May 7, 2002 to May 13, 2002 when the jury returned its verdict. The jury entered a plaintiffs verdict in favor of Fleming against Gogas but found her to be 50% negligent. They found her economic damages to be $10,000.00, did not find any noneconomic CT Page 8288 damages and, in accordance with the court's comparative negligence instruction, entered a total damage award of $5,000.00. The jury entered a defendant's verdict in favor of Gogas and Geanuracos against Morrow and Sigovich.[1]
On May 22, 2002, Fleming filed a motion for additur or to set aside the verdict and Sigovich and Morrow moved to set aside the verdict against them. Oral argument was held on June 17, 2002. The standard for ordering an additur or setting aside a verdict is well established. "The verdict should be disturbed only by considerations of the most persuasive character, as where the verdict shocks the sense of justice or the mind is convinced that it is in fact entirely disproportionate to the injury. . . . The evidence offered at trial must be given the most favorable construction to which it is reasonably entitled in support of the verdict. . . . Only under the most compelling circumstances may the court set aside a jury verdict because to do so interferes with a litigant's constitutional right in appropriate cases to have issues of fact decided by a jury. . . . The amount of damages to be awarded is a matter particularly within the province of the jury." (Citations omitted; internal quotation marks omitted.) Hunte v. Amica MutualInsurance Co., 68 Conn. App. 534, 541-42,791 A.2d 697 (2002).
 I. Fleming's Motion for Additur or to Set Aside the Verdict
Fleming claims that the jury's decision to award her economic damages without awarding noneconomic damages is contrary to the weight of the evidence regarding damages in this case. In Wichers v. Hatch,252 Conn. 174, 188, 745 A.2d 789 (2000), the Supreme Court "held that trial courts, when confronted with jury verdicts awarding economic damages and zero noneconomic damages, must determine on a case-by-case basis whether a verdict is adequate as a matter of law." Schroeder v.Triangulum Associates, 259 Conn. 325, 330, 789 A.2d 459 (2002). Wichers requires the trial court to "examine the evidence to decide whether the jury reasonably could have found that the plaintiff had failed in [her] proof of the issue [of damages]. That decision should be made, not on the assumption that the jury made a mistake, but, rather, on the supposition that the jury did exactly what it intended to do." Wichers, supra,252 Conn. 188-89.
Wichers implicitly recognized that the plaintiff must establish, by a fair preponderance of the evidence, that the noneconomic damages she seeks to be awarded were proximately caused by the defendant's negligence. Wichers also recognized that there can be any number of circumstances in which the causal connection cannot be proven. InWichers, there was evidence that the plaintiff suffered from a painful CT Page 8289 preexisting condition and, since "the causal connection between the pain experienced by the plaintiff and the defendant's conduct is notautomatic," (emphasis in original) id., 252 Conn. 186, the court concluded that the jury could reasonably determine that the defendant's negligence "did not cause [the plaintiff] actually to suffer greater pain that he already had experienced as a result of his preexisting condition." Id., 252 Conn. 189-90. See Santa Maria v. Klevecz,70 Conn. App. 10, 16, ___ A.2d ___ (2002) (Evidence that plaintiff previously injured herself in slip and fall, along with other evidence in case, sufficiently supported jury decision not to award noneconomic damages). On the other hand, in Schroeder v. Triangidum Associates, supra, 259 Conn. 325, because the jury awarded the plaintiff almost the full amount of his economic damages before determining the plaintiffs comparative negligence, the court concluded that it was "not reasonable for the jury to have found the defendant liable for the expense of spinal fusion surgery, but not liable for the pain and permanent disability necessarily attendant to such intrusive surgery." In Schroeder, the court believed that the jury's assessment of economic damages indicated that "as between the defendant and other possible causes of the plaintiffs injuries, excluding the plaintiff the jury found the defendant to be liable for the plaintiffs injuries." Id., 259 Conn. 332.
In this case, there was considerable evidence from which the jury could have reasonably concluded that other individuals, excluding both Fleming and Gogas, were a proximate cause of some of Fleming's injuries, particularly any lingering injuries she claimed to have sustained to her neck and back, and any resulting pain which she may have suffered. As a result, the jury could have reasonably concluded that Fleming did not sustain any significant injuries as a result of any conduct on the part of Gogas. Furthermore, even if the jury concluded that Gogas' negligence was a substantial factor in Fleming's hospitalization, the evidence before the jury established that the purpose of the hospitalization was to rule out injury and that the limited treatment given to Fleming resulted in a quick resolution of her symptoms. Finally, there was contradictory evidence as to any pain which Fleming may have suffered and there was no medical evidence of any permanent injury. Nonetheless, the jury did determine that Fleming proved economic damages of $10,000.00 resulting from the altercation that it determined was proximately caused, in part, by Gogas' negligence. This was approximately $4,000.00 less than her total claim for economic damages, which was based on $13,552.45 in hospital bills and lost wages of approximately $750 to $800. This verdict demonstrates that jury believed Fleming had failed, at least in part, in her proof of economic damages.
The nature, extent and proximate cause of Fleming's injuries were vigorously disputed in this case. The jury could have reasonably found CT Page 8290 that while Fleming maintained that Gogas punched her in the stomach which caused her to fall backwards onto a boat trailer, there was evidence she was either pushed down or trampled by the crowd, that she got caught in the middle between Gogas and the crowd, or simply lost her footing and stumbled backwards In light of hospital records that shows no abdominal or pelvic visceral injury, the jury could have reasonably determined that Gogas did not punch Fleming in the stomach.[2] There was also evidence that Fleming had consumed anywhere from four to six mixed drinks in the hours before she fell and that she was combative in the emergency room, Fleming did not lose consciousness, but she also could not remember much of what happened before she arrived in the emergency room where she was assessed as lacking sensation on her left side. She was admitted to the hospital and, over a period of three days, a battery of tests were performed to determine the cause, if any, of the left side weakness. All the tests were negative. Thereafter, she was discharged home with a cervical collar and missed approximately three weeks from a summer job until she returned to school in September.
Although Fleming was hospitalized from August 16 to 19, 1997, a careful review of the hospital records reveals that the purpose of her stay was to rule out injury, because there was evidence of decreased sensation on her left side upon admission, rather than for treatment. A letter dated August 27, 1997 from her attending neurosurgeons indicated as follows: "Patient is a 21-year old female who presented to us on 8/16/97 following an assault in a bar. She presented to us at that time with weakness on the left side which lasted a few hours and subsequently resolved. She underwent an MRI of the head, as well as MRI of the cervical spine, which did not reveal a specific site of injury. The patient was managed and improved over a few hour and had an intact neurological exam. The patient underwent complete spine x-rays which were negative." The hospital records contain contradictory notations as to whether Fleming was experiencing pain.[3]
While there was evidence that a flexion x-ray of the cervical spine showed that Fleming had a slightly exaggerated angulation at the mid-cervical area which could be from ligamentous laxity in that region, there was no evidence causally linking this particular injury to any conduct on the part of Gogas. The report of the August 27, 1997 flexion and extension x-rays indicates that the exaggeration may be "a normal variant." Furthermore, there was evidence that Fleming did not fully comply with her physicians s recommendations to continue to wear a cervical collar and that she suffered pain as result. The jury could have reasonably concluded that Fleming's own conduct caused her any neck pain she may have suffered. Further, as of October 8, 1997, a flexion-extension x-ray of the cervical spine was completely normal, an item of evidence the jury could have used in assessing Fleming's claim CT Page 8291 that she still continued to experience pain through the date of the trial.
Given the contradictory evidence regarding noneconomic damages and proximate cause, the lack of any medical evidence regarding permanent injury and the credibility assessment necessarily involved in determining whether Fleming had sustained her burden of proof on the issue of noneconomic damages, the court cannot conclude in this case that the award of zero noneconomic damages was unreasonable. Accordingly, Fleming's motion for additur or to set aside the verdict is denied.
 II. Sigovich's and Morrow's Motion To Set Aside the Verdict
Sigovich and Morrow claim that the jury could not find them to be the proximate cause of their own injuries and that the jury misapplied the law of comparative negligence. Viewing the evidence, and the reasonable inferences that could be drawn from it, in the light most favorable to sustaining the jury's verdict, the court finds that the defendants' verdicts were proper. "A verdict should not be set aside . . . where it is apparent that there was some evidence on which the jury might reasonably have reached its conclusion." Champagne v.Raybestos-Manhattan, Inc., 212 Conn. 509, 515, 562 A.2d 1100 (1989).
There was considerable evidence from which the jury could conclude that Sigovich and Morrow both actively contributed to the circumstances which led to the melee in which they ultimately sustained injuries. Sigovich was identified as being involved in the initial altercation between Lipusz and the restaurant's cook, and Morrow was a bystander to that altercation. Morrow chose to follow Gogas and Geanuracos as they attempted to escort Lipusz and Sigovich off the premises. There was evidence that both Sigovich and Morrow swung at or struck Gogas and Geanuracos after Fleming fell and generally contributed to the mayhem. While Geanuracos admitted striking both Sigovich and Morrow, he claimed to have done so only in self defense after being struck by them. Morrow had no memory of how he was injured or who caused him to be injured. Although Sigovich testified that Gogas, Geanuracos and a third person injured Morrow, no other witness could identify the individual who caused Morrow to be injured. As to Sigovich, he claimed it was Gogas, not Geanuracos, who struck him and caused him to fall in a manner which resulted in his injury. Gogas denied this version and testified that Sigovich lost his balance and fell while running away after he punched Gogas. Other witnesses supported Gogas' version of the events, while none supported Sigovich's version.
Clearly, the resolution of the issues of proximate cause and comparative negligence rested largely on the jury's assessment of the CT Page 8292 credibility of the witnesses. "Jury determinations with respect to witness credibility should not be disturbed absent compelling evidence to the contrary." Bovat v. Waterbury, 258 Conn. 574, 594, 783 A.2d 1001
(2001). Neither Sigovich nor Morrow have come forward with compelling evidence to defeat the jury's reasonable conclusion that each was more than 50% responsible for his own injuries. Accordingly, their motions to set aside the verdict are denied.
 III. Conclusion
For the reasons stated above, the court denies Fleming's motion for additur or to set aside the verdict, Sigovich's motion to set aside the verdict and Morrow's motion to set aside the verdict. Judgment shall enter in accordance with the jury's verdict in favor of the plaintiff Fleming with damages in the amount of $5,000.00, and in favor of the defendants Gogas and Geanuracos as to the claims of Sigovich and Morrow.
LINDA K. LAGER, JUDGE