ANASTACIO CRUZ *v.* FRANCISCO MONTANEZ ET AL.
(SC 17827)

Norcott, Katz, Palmer, Vertefeuille and Schaller, Js.

Argued January 14, 2008—officially released December 22, 2009

*Michael F. Ewing*, for the appellant (plaintiff).

*Keith S. McCabe*, for the appellee (named defendant).

*Thomas Mulligan*, with whom was *J. Kevin Golger*, for the appellee (defendant Jason Kannon).

*Ellen M. Aspell*, for the appellee (intervening plaintiff Weston Gardens, Inc.).

*Opinion*

PALMER, J. The plaintiff, Anastacio Cruz, received workers' compensation benefits from his employer, Weston Gardens, Inc. (Weston Gardens), for injuries that he had suffered in a motor vehicle accident that occurred in the course of his employment. Thereafter, Cruz commenced this action against the two persons who allegedly had caused the accident, the named defendant, Francisco Montanez, and the defendant

Jason Kannon, under General Statutes § 31-293 (a),[1]

[1] General Statutes § 31-293 (a) provides: "When any injury for which compensation is payable under the provisions of this chapter has been sustained under circumstances creating in a person other than an employer who has complied with the requirements of subsection (b) of section 31-284, a legal liability to pay damages for the injury, the injured employee may claim compensation under the provisions of this chapter, but the payment or award of compensation shall not affect the claim or right of action of the injured employee against such person, but the injured employee may proceed at law against such person to recover damages for the injury; and any employer or the custodian of the Second Injury Fund, having paid, or having become obligated to pay, compensation under the provisions of this chapter may bring an action against such person to recover any amount that he has paid or has become obligated to pay as compensation to the injured employee. If the employee, the employer or the custodian of the Second Injury Fund brings an action against such person, he shall immediately notify the others, in writing, by personal presentation or by registered or certified mail, of the action and of the name of the court to which the writ is returnable, and the others may join as parties plaintiff in the action within thirty days after such notification, and, if the others fail to join as parties plaintiff, their right of action against such person shall abate. In any case in which an employee brings an action against a party other than an employer who failed to comply with the requirements of subsection (b) of section 31-284, in accordance with the provisions of this section, and the employer is a party defendant in the action, the employer may join as a party plaintiff in the action. The bringing of any action against an employer shall not constitute notice to the employer within the meaning of this section. If the employer and the employee join as parties plaintiff in the action and any damages are recovered, the damages shall be so apportioned that the claim of the employer, as defined in this section, shall take precedence over that of the injured employee in the proceeds of the recovery, after the deduction of reasonable and necessary expenditures, including attorneys' fees, incurred by the employee in effecting the recovery. The rendition of a judgment in favor of the employee or the employer against the party shall not terminate the employer's obligation to make further compensation which the commissioner thereafter deems payable to the injured employee. If the damages, after deducting the employee's expenses as provided in this subsection, are more than sufficient to reimburse the employer, damages shall be assessed in his favor in a sum sufficient to reimburse him for his claim, and the excess shall be assessed in favor of the injured employee. No compromise with the person by either the employer or the employee shall be binding upon or affect the rights of the other, unless assented to by him. For the purposes of this section, the claim of the employer shall consist of (1) the amount of any compensation which he has paid on account of the injury which is the subject of the suit and (2) an amount equal to the present worth of any probable future payments which he has by award

which permits an injured employee who receives workers' compensation benefits to bring an action for damages against a third party tortfeasor. Pursuant to § 31-293 (a), Weston Gardens intervened as a plaintiff, seeking reimbursement for its workers' compensation payments to Cruz from any damages that Cruz recovered from Montanez and Kannon. After a trial, the jury awarded Cruz $75,000 in noneconomic damages. The trial court rendered judgment apportioning the damages to Weston Gardens in the amount of its workers' compensation payments to Cruz, with the remainder payable to Cruz. On appeal, Cruz claims that the trial court improperly (1) concluded that Weston Gardens is entitled to reimbursement from the jury's award because

become obligated to pay on account of the injury. The word 'compensation', as used in this section, shall be construed to include incapacity payments to an injured employee, payments to the dependents of a deceased employee, sums paid out for surgical, medical and hospital services to an injured employee, the burial fee provided by subdivision (1) of subsection (a) of section 31-306, payments made under the provisions of sections 31-312 and 31-313, and payments made under the provisions of section 31-284b in the case of an action brought under this section by the employer or an action brought under this section by the employee in which the employee has alleged and been awarded such payments as damages. Each employee who brings an action against a party in accordance with the provisions of this subsection shall include in his complaint (A) the amount of any compensation paid by the employer or the Second Injury Fund on account of the injury which is the subject of the suit and (B) the amount equal to the present worth of any probable future payments which the employer or the Second Injury Fund has, by award, become obligated to pay on account of the injury. Notwithstanding the provisions of this subsection, when any injury for which compensation is payable under the provisions of this chapter has been sustained under circumstances creating in a person other than an employer who has complied with the requirements of subsection (b) of section 31-284, a legal liability to pay damages for the injury and the injured employee has received compensation for the injury from such employer, its workers' compensation insurance carrier or the Second Injury Fund pursuant to the provisions of this chapter, the employer, insurance carrier or Second Injury Fund shall have a lien upon any judgment received by the employee against the party or any settlement received by the employee from the party, provided the employer, insurance carrier or Second Injury Fund shall give written notice of the lien to the party prior to such judgment or settlement."

that award was comprised solely of noneconomic damages, (2) precluded him from introducing into evidence the amount of the workers' compensation benefits that Weston Gardens had paid to him, and (3) concluded that Weston Gardens is entitled to reimbursement for permanent partial disability benefits, hereinafter referred to as loss of use benefits, that Weston Gardens had paid to Cruz. We reject each of Cruz' claims and, therefore, affirm the judgment of the trial court.

The following facts and procedural history are relevant to our resolution of this appeal. On the morning of March 21, 2002, Cruz was riding in the passenger seat of a 1985 Chevrolet pickup truck operated by Montanez. The men were both employed by Weston Gardens, a landscaping company, and were riding in the truck in the course of their employment with Weston Gardens. As Montanez approached the intersection of Eleven O'Clock Road and Ten O'Clock Road in the town of Weston, a vehicle driven by Kannon entered Eleven O'Clock Road from Ten O'Clock Road. Montanez swerved to avoid a collision, and, although there was no contact between the two vehicles, the truck in which Montanez and Cruz were riding collided with a rock wall. Cruz suffered various injuries, including disc protrusions and bulges in the lumbar spine and cervical spine, headaches, chest pain and contusions.

Following the accident, Cruz collected workers' compensation benefits from Weston Gardens in the amount of $26,090.96.[2] Thereafter, Cruz brought the present action against Montanez[3] and Kannon, alleging negli-

[2] The record does not reveal whether Cruz received these benefits pursuant to a voluntary agreement with Weston Gardens or following a contested hearing before the workers' compensation commissioner.

[3] Ordinarily, an employee injured in the course of his employment is barred by the exclusivity provisions of the Workers' Compensation Act, General Statutes § 31-275 et seq., from bringing an action in negligence against a coemployee. See General Statutes § 31-293a. Section 31-293a, however, contains an exception allowing such an action when the coemployee who caused the injuries was negligent in the operation of a motor vehicle.

gence in the operation of their respective motor vehicles. Cruz also named Weston Gardens as a defendant.[4]

Weston Gardens intervened as a plaintiff in the action pursuant to § 31-293 (a), seeking to recover the $26,090.96 that it had paid to Cruz in workers' compensation benefits. Prior to trial, the parties stipulated that this amount consisted of $8054.95 in medical payments, $1977.24 in temporary total disability benefits and $16,058.77 in loss of use benefits. After the stipulation was placed on the record, counsel for Weston Gardens asked to be excused from the proceedings. The trial court granted the request without objection from the other parties.

At trial, Cruz presented evidence of noneconomic damages resulting from the accident. Cruz also sought to introduce the amount of the workers' compensation benefits that he had received from Weston Gardens, but the trial court sustained the objection of Montanez' counsel to the admission of that evidence.[5] Although the trial court expressly allowed Cruz to adduce evidence of economic damages, Cruz elected not to present any such evidence. At the conclusion of the trial, the jury returned a verdict in favor of Cruz, awarding him $75,000 in noneconomic damages. The jury also concluded that Montanez and Kannon were 60 percent and 40 percent responsible, respectively, for Cruz' injuries.

Montanez thereafter filed a motion for judgment, requesting that the trial court apportion to Weston Gar-

[4] Cruz alleged that Weston Gardens was liable to the same extent as Montanez, its employee. That claim, however, is not the subject of this appeal. We note, in addition, that Cruz also named Saab Leasing Company, the company from which Kannon had leased his vehicle, as a defendant. Cruz alleged that, under General Statutes § 14-154a, the leasing company was liable to Cruz to the same extent as Kannon. Cruz' claim against Saab Leasing Company also is not the subject of this appeal.

[5] The parties' stipulation regarding workers' compensation benefits that had been placed on the record was not admitted into evidence at trial.

dens the $26,090.96 that it had paid to Cruz in workers' compensation benefits, thereby reducing the portion of the award that Cruz would receive to $48,909.04. Montanez further requested that the court apportion liability between Kannon and himself in accordance with the jury's verdict. Under Montanez' apportionment request, judgment would be rendered against him in the amount of $45,000 (60 percent x $75,000), of which $15,654.58 (60 percent x $26,090.96) would be payable to Weston Gardens and of which $29,345.42 (60 percent x $48,909.04) would be payable to Cruz, the remainder to be paid by Kannon.[6] Weston Gardens subsequently filed a motion for apportionment that mirrored Montanez' motion for judgment.[7]

Cruz also filed a motion for judgment in which he objected to Montanez' motion and claimed that he was entitled to the full $75,000 in damages awarded by the jury and that that amount was to be apportioned between Montanez and Kannon in the amounts of $45,000 and $30,000, respectively. Cruz maintained that the jury award should not be reduced by the payments that he had received from Weston Gardens in workers' compensation benefits because those payments were

[6] Under that apportionment request, Kannon would be required to pay a total of $30,000 (40 percent x $75,000), of which $10,436.38 (40 percent x $26,090.96) would be payable to Weston Gardens and of which $19,563.62 (40 percent x $48,909.04) would be payable to Cruz.

[7] Weston Gardens also requested in its motion for apportionment that the trial court deduct the reasonable and necessary attorney's fees that Cruz had incurred before apportioning liability between the Montanez and Kannon. See General Statutes § 31-293 (a) ("[i]f the employer and the employee join as parties plaintiff in the action and any damages are recovered, the damages shall be so apportioned that the claim of the employer, as defined in this section, shall take precedence over that of the injured employee in the proceeds of the recovery, after the deduction of reasonable and necessary expenditures, including attorneys' fees, incurred by the employee in effecting the recovery"). This aspect of Weston Gardens' motion, however, is not an issue on appeal. In the interest of simplicity, we do not factor Cruz' attorney's fees into any calculation of the apportionment of liability between Montanez and Kannon.

for economic damages that he had sustained as a result of the accident and he had sought and recovered only noneconomic damages against Montanez and Kannon. Cruz further argued that, at a minimum, the loss of use payments that he had received from Weston Gardens should not be included in any amount to be deducted from the $75,000 award for purposes of reimbursing Weston Gardens because such payments do not constitute "compensation" paid by an employer to an injured employee for which reimbursement to the employer is contemplated under § 31-293 (a).

In its memorandum of decision on the parties' motions, the trial court denied Cruz' motion for judgment and granted both Montanez' motion for judgment and Weston Gardens' motion for apportionment. In doing so, the trial court first identified the relevant language of General Statutes § 31-293 (a), which provides: "If the employer and the employee join as parties plaintiff in the action and any damages are recovered, the damages shall be so apportioned that the claim of the employer . . . shall take precedence over that of the injured employee in the proceeds of the recovery . . . ." The trial court concluded that the statutory language plainly and unambiguously directs that the employer's claim, which takes precedence over the employee's claim, shall be satisfied from "*any* damages" that the plaintiff may recover against the third party tortfeasor. (Emphasis added.) General Statutes § 31-293 (a). The trial court further concluded that, because the term "any damages" is broad and encompassing, and does not differentiate between economic and noneconomic damages, the court was required to reduce the jury award of noneconomic damages by an amount equal to the workers' compensation benefits that Weston Gardens had paid to Cruz. Accordingly, the court rendered judgment against Montanez in the amount of $45,000 and against Kannon in the amount

of $30,000, from which a total of $26,090.96 was payable to Weston Gardens and $48,909.04 was payable to Cruz.

On appeal,[8] Cruz renews the claims that he raised in the trial court. Cruz also maintains that Weston Gardens could have recovered the $26,090.96 in workers' compensation benefits that it had paid to Cruz but only if Weston Gardens had presented evidence of those payments at trial and received its own award against Montanez and Kannon or, alternatively, only if Weston Gardens had commenced a separate action against Montanez and Kannon under § 31-293 (a) seeking an award in the amount of its workers' compensation payments to Cruz. We reject Cruz' claims.

I

We first address Cruz' contention that the trial court improperly interpreted § 31-293 (a) in concluding that Weston Gardens was entitled to an apportionment of the jury award even though the award consisted solely of noneconomic damages. Because § 31-293 (a) expressly provides that an employer's claim for reimbursement of workers' compensation benefits takes precedence over *any* damages that an injured employee receives in a third party action, we reject Cruz' claim.

"A brief overview of the workers' compensation principles that are implicated by this issue is warranted. When an employee suffers a work-related injury, workers' compensation benefits are the exclusive remedy as between the employee and the employer. General Statutes § 31-284 (a). The employee, however, may bring a civil action against parties other than the employer who are responsible for the employee's injuries. See General Statutes § 31-293. When an employee brings such an action, [§] 31-293 . . . provide[s] that

---

[8] Cruz appealed to the Appellate Court from the judgment of the trial court, and we transferred the appeal to this court pursuant to General Statutes § 51-199 (c) and Practice Book § 65-1.

. . . the plaintiff's employer . . . may join the proceedings as a plaintiff and recover from the judgment against the third party any compensation benefits paid. Specifically, the [statute] provide[s] the [employer] with a right of reimbursement from the judgment against the third party for '(1) the amount of any compensation which [it] has paid on account of the injury which is the subject of the suit and (2) an amount equal to the present worth of any probable future payments which he has by award become obligated to pay on account of the injury.' General Statutes § 31-293 (a)." *Schroeder* v. *Triangulum Associates*, 259 Conn. 325, 337–38, 789 A.2d 459 (2002).

Our resolution of Cruz' claim requires us to discern the meaning of § 31-293 (a) as applied to the factual scenario presented. Such "[i]ssues of statutory construction raise questions of law, over which we exercise plenary review. . . . The process of statutory interpretation involves the determination of the meaning of the statutory language as applied to the facts of the case, including the question of whether the language does so apply. . . . When construing a statute, [o]ur fundamental objective is to ascertain and give effect to the apparent intent of the legislature. . . . In other words, we seek to determine, in a reasoned manner, the meaning of the statutory language as applied to the facts of [the] case, including the question of whether the language actually does apply. . . . In seeking to determine that meaning, General Statutes § 1-2z directs us first to consider the text of the statute itself and its relationship to other statutes. If, after examining such text and considering such relationship, the meaning of such text is plain and unambiguous and does not yield absurd or unworkable results, extratextual evidence of the meaning of the statute shall not be considered." (Internal quotation marks omitted.) *Testa* v. *Geressy*, 286 Conn. 291, 308, 943 A.2d 1075 (2008). When the language of

a statute is not plain and unambiguous, we "look for interpretive guidance to the legislative history and circumstances surrounding its enactment, to the legislative policy it was designed to implement, and to its relationship to . . . common law principles governing the same general subject matter." (Internal quotation marks omitted.) *Fedus* v. *Planning & Zoning Commission*, 278 Conn. 751, 756, 900 A.2d 1 (2006).

We begin, therefore, with the language of General Statutes § 31-293 (a), which, as we have explained, provides in relevant part that an employee who suffers an injury that "has been sustained under circumstances creating in a person other than an employer . . . a legal liability to pay damages for the injury" may "proceed at law against such person to recover damages for the injury . . . ." The statute further provides that "any employer . . . having paid, or having become obligated to pay, compensation under the provisions of [the Workers' Compensation Act (act)] may bring an action against such person to recover any amount that he has paid or has become obligated to pay as compensation to the injured employee. . . . If the employer and the employee join as parties plaintiff in the action and any damages are recovered, the damages shall be so apportioned that the claim of the employer . . . shall take precedence over that of the injured employee in the proceeds of the recovery . . . ."[9] General Statutes § 31-293 (a).

---

[9] General Statutes § 31-293 (a) also provides in relevant part: "Notwithstanding the provisions of this subsection, when any injury for which compensation is payable under the provisions of this chapter has been sustained under circumstances creating in a person other than an employer . . . a legal liability to pay damages for the injury and the injured employee has received compensation for the injury from such employer . . . the employer . . . shall have a lien upon *any* judgment received by the employee against the party or any settlement received by the employee from the party . . . ." (Emphasis added.)

We agree with the trial court that the language of § 31-293 (a) is clear. An employer that pays workers' compensation benefits to an injured employee is entitled to reimbursement for those payments from "any damages" that the employee may recover from the third party tortfeasor. General Statutes § 31-293 (a). It is true, of course, as this court previously has recognized, that the term "any" can have a variety of different meanings depending on the context in which it is used in a particular statute. E.g., *Ames* v. *Commissioner of Motor Vehicles*, 267 Conn. 524, 531, 839 A.2d 1250 (2004). It is evident, however, that, for purposes of § 31-293 (a), the term "any damages" means damages of whatever kind or sort, without limitation. See, e.g., *Gipson* v. *Commissioner of Correction*, 257 Conn. 632, 640, 778 A.2d 121 (2001) (term "any criminal action" for purposes of General Statutes § 51-296 [a] intended to be broad and comprehensive in scope). Despite this plain statutory language, which draws no distinction between economic and noneconomic damages, Cruz asserts that, because he sought and was awarded only noneconomic damages, the trial court improperly concluded that Weston Gardens was entitled to reimbursement from that award because the payments that Weston Gardens had made to Cruz represented economic damages that Cruz had sustained as a result of the accident. We reject Cruz' claim because it is contrary to the unambiguous directive of § 31-293 (a) that the employer shall be reimbursed from "any damages" obtained by the employee against the third party tortfeasor.

Our conclusion is buttressed by the fact that the legislature has limited deductions against a plaintiff's recovery to economic damages in other statutes but has not done so in § 31-293 (a). See General Statutes § 52-225a (authorizing collateral source reduction against award of economic damages in personal injury and wrongful death actions but not authorizing similar

reduction against award of noneconomic damages). Accordingly, we may presume that, if the legislature had intended to limit the apportionment of damages under § 31-293 (a) as Cruz urges, it would have done so explicitly. See, e.g., *Stitzer* v. *Rinaldi's Restaurant*, 211 Conn. 116, 119, 557 A.2d 1256 (1989) (legislature knows how to use limiting terms when it chooses to do so).

Cruz nevertheless contends that it is improper to permit an employer to receive an apportionment of an award that its employee has obtained against a third party tortfeasor when, as in the present case, that award consists solely of noneconomic damages and the apportionment is predicated on the employer's payment of workers' compensation benefits for economic damages that the employee has sustained. As we recently have reiterated, however, "a court must construe a statute as written. . . . Courts may not by construction supply omissions . . . or add exceptions merely because it appears that good reasons exist for adding them. . . . The intent of the legislature, as this court has repeatedly observed, is to be found not in what the legislature meant to say, but in the meaning of what it did say. . . . It is axiomatic that the court itself cannot rewrite a statute to accomplish a particular result. That is the function of the legislature."[10] (Internal quotation marks

[10] To support his contention, Cruz relies on *Martinez* v. *St. Joseph Hospital & Nursing Home of Del Norte, Inc.*, 878 P.2d 13 (Colo. App. 1993), cert. denied sub nom. *State Compensation Ins. Authority* v. *Martinez*, Colorado Supreme Court, Docket No. 94CS155 (August 8, 1994). In *Martinez*, the plaintiff, an injured employee, had received workers' compensation benefits for economic damages from the state compensation insurance authority (authority), which sought reimbursement for those payments from an award that the plaintiff had received following a trial in his action against the third party tortfeasor. Id., 14. The Colorado Court of Appeals concluded that the authority was not entitled to such reimbursement under the applicable statutes. Id., 16. Cruz asserts that, in light of *Martinez*, we should interpret our statutory scheme as foreclosing any apportionment of Cruz' award in favor of Weston Gardens. We reject Cruz' contention because the language of the Colorado statute at issue in *Martinez*; see id., 14; bears no resemblance

omitted.) *Vincent* v. *New Haven*, 285 Conn. 778, 792, 941 A.2d 932 (2008).

Furthermore, contrary to Cruz' assertion, our construction of § 31-293 (a) does not lead to an illogical or otherwise unreasonable result. In fact, permitting an employer to receive an apportionment of an employee's award that consists solely of noneconomic damages caused by the third party tortfeasor, even when that apportionment represents reimbursement for the employer's payment of workers' compensation benefits for economic damages suffered by its employee, is fully consistent with one of the primary goals of § 31-293 (a), namely, "to ensure that . . . the ultimate loss [falls on] the wrongdoer . . . by allowing the employer to take action in order to recover the workers' compensation benefits [that] it was legally obligated to pay to its injured employee . . . ." (Citation omitted; internal quotation marks omitted.) *Goodyear* v. *Discala*, 269 Conn. 507, 520 n.11, 849 A.2d 791 (2004). "The concept underlying third party actions is the moral idea that the ultimate loss from wrongdoing should fall upon the wrongdoer." 6 A. Larson & L. Larson, Workers' Compensation Law (2009) § 110.01, p. 110-2. "It is equally elementary that the claimant should not be allowed to keep the entire amount both of his or her compensation award and of the common-law damage recovery. The obvious disposition of the matter is to give the employer so much of the negligence recovery as is necessary to reimburse it for its compensation outlay, and to give the employee the [remaining amount]." Id., § 11.02, pp. 110-3 through 110-4. Finally, Cruz could have sought economic damages against Montanez and Kannon but, for whatever reason, elected not to do so. If Cruz had sought and recovered those economic damages—pre-

to the language of § 31-293 (a), which clearly and unequivocally provides that the employer may seek reimbursement from *any* damages that the employee recovers from the third party tortfeasor.

sumably, Cruz would have had little difficulty establishing that he had sustained economic damages—then any possible unfairness in apportioning that amount to Weston Gardens would have been avoided.

Cruz also contends that, because § 31-293 (a) authorizes both the employer and the employee to bring separate actions against the tortfeasor, the employer must seek reimbursement directly from the third party tortfeasor, either in a separate action against the tortfeasor or in the context of the employee's action against the tortfeasor. This claim also lacks merit because it is contrary to the express statutory language. First, § 31-293 (a) *permits* an employer to commence a direct action against the third party tortfeasor but it does not require that the employer bring such an action. Furthermore, the statute also provides that, when "the employer is a party defendant in the action" filed by the employee against the third party tortfeasor, "the employer may join as a party plaintiff in the action." General Statutes § 31-293 (a). In the present case, Weston Gardens, which was named as a defendant in Cruz' action, properly sought and was granted permission to intervene as a plaintiff in Cruz' action. General Statutes § 31-293 (a) further provides that, "[i]f the employer and the employee join as parties plaintiff in the action and any damages are recovered," the employer, whose claim takes precedence over that of the employee, shall be entitled to apportionment of those damages in the amount that the employer paid to the employee in workers' compensation benefits. The trial court and Weston Gardens proceeded in strict compliance with this procedure, and, consequently, Cruz has no basis for challenging Weston Gardens' decision to intervene as a plaintiff rather than to pursue its own action against Montanez and Kannon.

## II

Cruz next claims that the trial court improperly concluded that Weston Gardens was entitled to recover the amount that it had paid to Cruz in workers' compensation benefits even though, at trial, Weston Gardens did not adduce evidence of the amount of those payments. We disagree.

The following additional facts are necessary to our resolution of this claim. At trial, Cruz sought to introduce evidence of the amount that Weston Gardens had paid to him in workers' compensation benefits. Montanez' counsel objected to the admission of that evidence, however, and the trial court sustained the objection. Thereafter, Cruz presented no evidence of economic damages, including medical bills and lost wages, for which Cruz had been reimbursed by Weston Gardens in the amount of $26,090.96. Rather, Cruz introduced evidence of noneconomic damages only. At the conclusion of Cruz' case, the trial court indicated that it would allow Cruz to "reopen his case" for the purpose of presenting evidence of economic damages, if he chose to do so. Cruz, however, declined the court's invitation.

In his motion for judgment following the jury verdict, Cruz contended that, because Weston Gardens was aware that he had no intention of presenting evidence of the economic damages that had provided the basis for Weston Gardens' workers' compensation payments to Cruz, Weston Gardens itself was required to adduce such evidence if it wished to recover the amount of those payments. According to Cruz, Weston Garden's failure to do so constituted a waiver of any claim of entitlement that it otherwise had to an apportionment of the jury award for those payments. The trial court rejected Cruz' claim.

On appeal, Cruz contends that, because § 31-293 (a) authorizes both the employer and the employee to bring separate, independent actions against the third party tortfeasor, an employer is required to adduce independent evidence of the workers' compensation benefits that it has paid to the employee when, as in the present case, the employee does not present evidence of the damages for which those payments represent reimbursement. We conclude that Cruz cannot prevail on this claim.

Although the language of § 31-293 (a) does not directly address the issue raised by Cruz' claim, this court's analysis and conclusion in *Stavola* v. *Palmer*, 136 Conn. 670, 73 A.2d 831 (1950), resolve the claim. In *Stavola*, the plaintiff, James Stavola, employed his brother, Matthew Stavola, as a truck driver. Id., 672. Matthew Stavola was killed when the truck that he was driving during the course of his employment was struck by a train owned by the New York, New Haven and Hartford Railroad Company (railroad company).[11] Id., 672–73. The compensation commissioner ordered James Stavola to pay Matthew Stavola's widow $30 per week for 312 weeks and to pay a burial fee of $250. Id., 674. James Stavola then brought a negligence action against the railroad company, seeking reimbursement for the workers' compensation payments that he had made and would be required to make under General Statutes (1949 Rev.) § 7425, the statutory predecessor to § 31-293 (a).[12] Id., 672, 675. Matthew Stavola's widow, the administratrix of his estate, declined to join the

---

[11] The named defendant, Howard S. Palmer, was a trustee in bankruptcy of the New York, New Haven and Hartford Railroad Company. See *Stavola* v. *Palmer*, supra, 136 Conn. 673.

[12] Although revisions have been made to the statute since 1949, it has remained substantially similar. As we explain more fully hereinafter, the only amendment to the statute that even arguably is relevant to Cruz' claim, namely, Public Acts 1993, No. 93-228, § 7, has no bearing on our resolution of this appeal.

action, and, therefore, James Stavola was the sole plaintiff. Id., 674.

At trial, the court apprised the jurors of the amount of workers' compensation that James Stavola was obligated to pay and, thereafter, instructed them that if they returned a verdict for James Stavola, it should be either for that amount or the amount of damages that Matthew Stavola's administratrix would have been entitled to recover, whichever was less. Id., 679. The jury rendered a verdict for James Stavola in an amount slightly less than the amount that he was required to pay Matthew Stavola's administratrix; see id., 674, 680; and the trial court rendered judgment in accordance with the jury verdict.

On appeal, the railroad company claimed that James Stavola properly could not maintain an action against the railroad company without making Matthew Stavola's administratrix a party to the action. Id., 674–75. In support of this claim, the railroad company asserted, in essence, that proceeding without Matthew Stavola's administratrix had given rise to an undue risk of jury confusion. Id., 676. In rejecting the railroad company's claim, this court explained that, although James Stavola's cause of action was derivative of the adminstratrix' cause of action, James Stavola could bring his own action against the third party tortfeasor. Id., 678–79. We further explained that, in view of the scenario presented, in which "the damages may not exceed the amount of [workers'] compensation and neither the employee nor his representative is a plaintiff, it is essential that the jury should be told what the amount of [workers'] compensation is." Id., 679.

In resolving the issue presented, we also described the more typical litigation scenario that occurs when an injured employee who has received workers' compensation brings an action against a third party tortfea-

sor. "Ordinarily, when both the employee and the employer are parties plaintiff, the jury should not be told the amount of the employer's obligation for [workers'] compensation. The jury returns a verdict for the amount of damages to which [it] find[s] the employee is entitled, and thereafter the court apportions that to the employer and the employee." Id.

We also relied on *Mickel* v. *New England Coal & Coke Co.*, 132 Conn. 671, 47 A.2d 187 (1946); see *Stavola* v. *Palmer*, supra, 136 Conn. 677, 679; a case with a procedural posture similar to that of the present case. In *Mickel*, the administratrix of a deceased employee brought an action in negligence against a third party tortfeasor, and the employer joined in the action to recoup the workers' compensation benefits that it had been obligated to pay. *Mickel* v. *New England Coal & Coke Co.*, supra, 673. The court in *Mickel* stated: "[T]he employer has a right to take part in the trial [insofar] as the issues involve the question of the legal liability of the third party to the plaintiff employee and the amount of damages which the employee is entitled to recover for his injuries, but . . . the amount the employer has paid or become obligated to pay has no bearing [on] the issues to be submitted to the jury, and evidence and argument as to that amount should have no place in the trial. In the event of a . . . verdict [for the plaintiffs], it is for the court, without the jury, to apportion the damages between the two plaintiffs [on] the basis either of a stipulation entered into by them or of evidence heard by it." Id., 680–81.

Cruz contends that these statements in *Stavola* and *Mickel* are dicta and, therefore, are not dispositive of his claim. As this court has suggested, however, a court's discussion of matters necessary to its holding is not mere dictum. See *Diamond National Corp.* v. *Dwelle*, 164 Conn. 540, 544, 325 A.2d 259 (1973). "Dictum includes those discussions that are merely passing com-

mentary . . . those that go beyond the facts at issue . . . and those that are unnecessary to the holding in the case. . . . [I]t is not dictum [however] when a court . . . intentionally takes up, discusses, and decides a question germane to, though not necessarily decisive of, the controversy . . . . Rather, such action constitutes an act of the court [that] it will thereafter recognize as a binding decision." (Internal quotation marks omitted.) *Red 11, LLC* v. *Conservation Commission*, 117 Conn. App. 630, 647 n.9, 980 A.2d 917 (2009). In both *Stavola* and *Mickel*, this court took up and discussed the issue of the standard practice for admitting evidence of the payment of workers' compensation benefits in the context of developing a framework in which to decide the evidentiary issue presented.[13] We therefore are not persuaded that we should disregard our statements in *Stavola* and *Mickel*. In any event, we see no persuasive reason to deviate from the approach that we recognized as the proper one in those cases.

Cruz further contends that Public Acts 1993, No. 93-228, § 7 (P.A. 93-228), which amended General Statutes (Rev. to 1993) § 31-293 (a) to include a requirement that the amount of compensation paid by an employer shall be included in the employee's complaint against a third party tortfeasor, evinces a legislative intent that evidence of the amount of compensation paid by the employer can and should be presented to the jury. We

[13] Cruz also contends that, even if we adhere to our statements in *Stavola* and *Mickel* concerning the procedure ordinarily to be followed when an employer intervenes in an action initiated by its employee, this case presents an exception to that general rule because Cruz elected not to seek economic damages from Montanez and Kannon. We disagree with this contention because Cruz readily could have sought such damages but simply decided not to do so. Having been placed on notice of the proper procedure by our prior case law, Cruz cannot now complain that it is unfair or unreasonable to expect that he would have followed that procedure, especially in the absence of any suggestion that his decision was not the product of his own strategic choice or that there otherwise existed some impediment to his production of evidence of his economic damages.

also disagree with this contention. Under Practice Book § 16-15 (b) (1),[14] the trial court has the discretion to decide whether to submit the complaint to the jury. Cruz has not identified anything in the legislative history of P.A. 93-228, § 7, to indicate that the legislature sought to require that complaints in third party tort actions under § 31-293 (a) *must* be submitted to the jury, and our independent research has revealed no evidence of such an intent.[15] Indeed, evidence of workers' compensation benefits paid to an employee properly may be kept from the jury so that the jurors are not unfairly influenced by the fact that the employee already has received compensation for his injuries. See 6 A. Larson & L. Larson, supra, § 118.03, p. 118-4 and n.9 (noting that employee's case against third party tortfeasor may be prejudiced by revealing to jury that "an insurance company is going to profit" from award of damages by virtue of appropriation of that award or by revealing to jury that employee already has been compensated with workers' compensation benefits).

Finally, contrary to the interpretation of § 31-293 (a) advanced by Cruz, the claims of the employee and the employer against the third party tortfeasor are not completely "separate" claims. As this court has explained, § 31-293 (a) "protects an employer by allowing the employer to obtain reimbursement for workers' compensation benefits from a third party tortfeasor, either by becoming an intervening plaintiff in the employee's cause of action or by bringing a separate action *derivative of* the employee's cause of action." (Emphasis added.) *Durniak* v. *August Winter & Sons, Inc.*, 222

[14] Practice Book § 16-15 provides in relevant part: "(b) The judicial authority *may, in its discretion,* submit to the jury:

"(1) The complaint, counterclaim and cross complaint, and responsive pleadings thereto . . . ." (Emphasis added.)

[15] We note that Cruz' complaint does not contain the amount of workers' compensation benefits that Weston Gardens had paid or was obligated to pay to Cruz.

Conn. 775, 779, 610 A.2d 1277 (1992); see also *Stavola* v. *Palmer*, supra, 136 Conn. 678 ("The employer has the right to recover for the injury done him by the tortfeasor who caused the death of his employee. His right is derived from the employee's right . . . . [T]he right of the employer depends [on] the employee's right to the extent that he has no cause of action unless the employee or his representative has a cause of action, and he cannot recover any more than the employee himself or his representative could recover. Subject to those limitations, the right which the employer is given by the statute is his."); *Mickel* v. *New England Coal & Coke Co.*, supra, 132 Conn. 678 ("[t]he provisions in the statute read as a whole make it clear that the employer's right to recover is derivative and not independent and that in no event could recovery by him exceed the amount to which the employee [is] entitled"). Because Weston Gardens' claim is wholly derivative of Cruz' claim—that is, Weston Gardens would have no claim against Montanez and Kannon if Cruz did not have a claim against them—it is reasonable to conclude that, when Weston Gardens intervened as a plaintiff in Cruz' action, it was not required to present a separate case to the jury. An employer will need to present such evidence only when the employee does not assert a claim against the third party tortfeasor; under such circumstances, the employer can recoup its workers' compensation payments only by bringing its own independent action against the tortfeasor.

### III

Cruz finally contends that, even if Weston Gardens may receive reimbursement from the jury's award of noneconomic damages, the trial court improperly concluded that Weston Gardens is entitled to reimbursement for the $16,058.77 in loss of use benefits that Weston Gardens had paid to Cruz, who claims that such

payments are not contemplated under § 31-293 (a). We also disagree with this claim.

General Statutes § 31-293 (a) provides in relevant part that "the claim of the employer shall consist of (1) the amount of any *compensation* which he has paid on account of the injury which is the subject of the suit and (2) an amount equal to the present worth of any probable future payments of which he has by award become obligated to pay on account of the injury. . . ." (Emphasis added.) The statute also provides in relevant part: "The word 'compensation', as used in this section, shall be construed to include incapacity payments to an injured employee, payments to the dependents of a deceased employee, sums paid out for surgical, medical and hospital services to an injured employee, the burial fee provided by subdivision (1) of subsection (a) of section 31-306, payments made under the provisions of sections 31-312 and 31-313, and payments made under the provisions of section 31-284b in the case of an action brought under this section by the employer or an action brought under this section by the employee in which the employee has alleged and been awarded such payments as damages. . . ."[16] General Statutes § 31-293 (a).

We agree with Cruz that the only category in which loss of use benefits arguably might fall for purposes of the definition of "compensation" under § 31-293 (a) is the category that includes "incapacity payments to an injured employee . . . ." General Statutes § 31-293 (a). Cruz maintains, however, that loss of use payments are

---

[16] We note that, for purposes of the act, the term " '[c]ompensation' means benefits or payments mandated by the provisions of this chapter, including, but not limited to, indemnity, medical and surgical aid or hospital and nursing service required under section 31-294d and any type of payment for disability, whether for total or partial disability of a permanent or temporary nature, death benefit, funeral expense, payments made under the provisions of section 31-284b, 31-293a or 31-310, or any adjustment in benefits or payments required by [the act]." General Statutes § 31-275 (1) (G) (4).

not incapacity payments because the legislature has drawn a distinction between the two kinds of benefits. Specifically, Cruz relies on General Statutes § 31-308 (c), which authorizes an award of benefits for "permanent significant" disfigurement or scarring "[i]n addition to compensation for total or partial incapacity *or* for a specific loss of a member or use of the function of a member of the body . . . ." (Emphasis added.) Cruz also relies on the fact that this court previously has defined loss of use payments as a disability benefit, a category of compensation that is distinct from incapacity payments. As we previously have observed, "[b]enefits available under the act serve the dual function of compensating for the disability arising from the injury and for the loss of earning power resulting from that injury. . . . Compensation for the disability takes the form of payment of medical expenses . . . and specific indemnity awards, which compensate the injured employee for the lifetime handicap that results from the permanent loss of, or loss of use of, a scheduled body part." (Citations omitted.) *Rayhall* v. *Akim Co.*, 263 Conn. 328, 349, 819 A.2d 803 (2003). In addition, "[c]ompensation for loss of earning power takes the form of partial or total incapacity benefits. . . . Incapacity, as that term is used under the [act], means incapacity to work, as distinguished from the loss or loss of use of a member of the body." (Citations omitted; internal quotation marks omitted.) Id., 349–50.

We need not determine whether loss of use benefits reasonably may be considered to fall within the purview of incapacity payments for purposes of § 31-293 (a) because this court previously has observed that the list of benefits contained in the definition of "compensation" for purposes of § 31-293 (a) is not exhaustive. In *Schroeder* v. *Triangulum Associates*, supra, 259 Conn. 325, the named plaintiff, Paul Schroeder, was injured during the course of his employment, and he received

workers' compensation benefits from his employer, Airborne Freight Corporation, and from the second injury fund (fund), which paid him a lump sum settlement pursuant to a voluntary agreement. Id., 327. Schroeder brought a third party negligence action against, among others, DeZinno and Associates, Inc., on whose premises he had sustained his injury. Id., 327–28, 336. The fund intervened in that action, seeking reimbursement for the settlement payments that it had paid to Schroeder. Id., 327. Although we disagreed with the fund that the settlement represented "an amount equal to the present worth of any probable future payments," a type of payment expressly covered by § 31-293 (a), we nevertheless concluded that the fund was entitled to apportionment of the amount of the settlement payment from any damages that the jury awarded to Schroeder. Id., 336.

In reaching this conclusion, we examined the definition of "compensation" in § 31-293 (a) and explained: "The language 'shall be construed to include' [in § 31-293 (a)] indicates . . . legislative intent to broaden, rather than restrict, the scope of the word compensation in § 31-293. 'When "include" is utilized, it is generally improper to conclude that entities not specifically enumerated are excluded.' 2A J. Sutherland, Statutory Construction (6th Ed. Singer 2000) § 47:23, p. 316. Thus, we reject an interpretation of § 31-293 that forecloses the inclusion of payments made pursuant to voluntary settlement agreements." *Schroeder* v. *Triangulum Associates*, supra, 259 Conn. 340. In light of *Schroeder*, we are unwilling to adopt Cruz' narrow interpretation of the definition of "compensation" under § 31-293 (a). We note, moreover, that *Schroeder* was decided nearly eight years ago, and the legislature has taken no action to overrule legislatively our interpretation of the definition of "compensation" for purposes of § 31-293 (a). We reasonably may view this legislative inaction as

legislative approval of our construction of that statutory provision. See, e.g., *State* v. *Peeler*, 271 Conn. 338, 427–28, 857 A.2d 808 (2004) (legislative inaction following this court's interpretation of statute may be viewed as legislative acquiescence in that interpretation), cert. denied, 546 U.S. 845, 126 S. Ct. 94, 163 L. Ed. 2d 110 (2005). We therefore reject Cruz' contention that the payments included in the definition of "compensation" in § 31-293 (a) are limited to those payments expressly enumerated in that statutory provision.

Finally, we see no principled reason why the legislature would have excluded loss of use payments from the purview of the term "compensation." Indeed, to conclude otherwise would frustrate the clear public policy of § 31-293 (a) that the third party tortfeasor, and not the employer, shall be primarily responsible for bearing the economic loss resulting from the tortfeasor's negligence.[17] See, e.g., *Dodd* v. *Middlesex Mutual Assurance Co.*, 242 Conn. 375, 384, 698 A.2d 859 (1997) ("[b]y allowing the employer to take action in order to recover the workers' compensation benefits it was legally obligated to pay to its injured employee, the act ensure[s] that, as in an action in tort, the ultimate loss [falls on] the wrongdoer"); see also *Stavola* v. *Palmer*, supra, 136 Conn. 677–78 (right of reimbursement based on theory that employer has satisfied obligation "which was primarily the obligation of the [tortfeasor]"). We

---

[17] We acknowledge that, because the term "compensation" is defined broadly in § 31-275 (1) (G) (4); see footnote 16 of this opinion; it is not entirely clear why the legislature included a similarly expansive definition of the term in § 31-293 (a). Perhaps the legislature did so to emphasize that the term is to be construed broadly in § 31-293 (a). In any event, in view of our analysis and conclusion in *Schroeder*, the fact that the legislature has not legislatively overruled *Schroeder*, and because we can think of no reason why the legislature would have excluded loss of use benefits from the definition of "compensation" in § 31-293 (a), we are convinced that our construction of § 31-293 (a) more likely reflects the intent of the legislature than the interpretation advanced by Cruz.

conclude, therefore, that the trial court properly apportioned to Weston Gardens a portion of the jury award in the amount of its workers' compensation payments to Cruz, including that part of its payments that constituted loss of use benefits.

The judgment is affirmed.

In this opinion the other justices concurred.